[No. 834.]

# ALEXANDER D. SMITH, APPELLANT, *v.* ALEXANDER B. STEWART ET AL., RESPONDENTS.

HOMESTEAD—WHAT IT INCLUDES.—In construing the homestead law of 1865: *Held*, that a town lot upon which is erected a dwelling-house, two other buildings used as stores, and a stone house for storing goods, the buildings being separate from each other, can be claimed and held as a homestead; that the law exempts from execution a tract of land on which the homestead is located, to the extent of five thousand dollars in value, without limiting the other uses to which the land is put, as long as it is used and claimed as a homestead.

APPEAL from the District Court of the Third Judicial District, Lyon county.

The facts appear in the opinion.

*Lewis & Deal*, for appellant.

Boisot's homestead only embraced the land upon which his dwelling-house stood, the dwelling-house and out-buildings used in connection with it, necessary to the proper enjoyment of the dwelling itself. The primary object of the legislature is to exempt a homestead, that is the dwelling-place of the family, and not simply property to the value of five thousand dollars. (*Gregg* v. *Bostwick*, 33 Cal. 225; *Estate of Delaney*, 37 Id. 176.)

The decision in *Clark* v. *Shannon*, 1 Nev. 569, was based upon sections 4, 5, 6, 7 of the act of 1861. That act is in many respects essentially different from the act of 1864–5.

*C. H. Belknap* and *Kirkpatrick & Stephens*, for respondents.

The entire premises embraced by Boisot's homestead claim was homestead property. (1 Comp. L. 186 *et seq.; Goldman* v. *Clark*, 1 Nev. 607; *Clark* v. *Shannon*, 1 Id. 568; *Kelly* v. *Baker*, 10 Minn. 154; Stats. of Minnesota, 498; *Ackley* v. *Chamberlain*, 16 Cal. 181.)

By the Court, LEONARD, J.:

On the twenty-eighth day of October, 1875, one William Rogan recovered judgment in the third judicial district

court, Lyon county, in this state, against Charles V. Boisot, which was duly docketed on the same day. On the thirtieth day of October following, execution was duly issued thereon, and the property described in the complaint in this action was levied on, and on the twenty-ninth day of January, 1876, sold to said Rogan. There was no redemption of any portion of the premises, and on the thirty-first day of July, 1876, the sheriff executed and delivered to Rogan a deed conveying the same to him. On the day last stated, Rogan, for a valuable consideration, conveyed the premises to appellant. On the seventh day of November, 1874, W. M. Seawell, judge of the third judicial district court before mentioned, and trustee under the act of the legislature of this State, entitled, "An act prescribing rules and regulations arising under the act of Congress entitled, 'An act for the relief of the inhabitants of cities and towns upon the public lands,' approved March 2, 1867; approved February 20, 1869," as such judge and trustee, conveyed the premises in controversy to said Boisot, who, on the eleventh day of November, 1874, made his declaration of homestead in writing, claiming the said premises as a homestead, and caused the same to be recorded on the thirteenth day of November following, in the office of the county recorder of said Lyon county, wherein the premises are situated. At the time of making his declaration, Boisot was, and ever since has been, a married man, and at such time, and up to December 1, 1875, he resided with his family upon said premises, using the dwelling-house thereon as his family residence. The property in controversy consists of a lot of land on Main street, in Silver city, about forty-nine by one hundred and thirty-seven feet, whereon there is the said dwelling-house and two buildings used as stores, and a stone house used for storing goods. The two stores are on Main street, and the stone house is in the rear of the stores, all being separated from each other and from the dwelling-house. There is an alley-way about two and a half feet wide between the two stores, which is used in reaching the dwelling-house in the rear of the stores, and there is a stone wall behind the two stores for

the support of a bank of earth in the rear, making a terrace of the ground upon which the dwelling-house stands. There are, and have been, no fences dividing the dwelling-house from the other buildings. Boisot and family never used the stores on Main street or the stone house in the rear, as a dwelling-house, but while occupying the dwelling-house with his family, he used the two stores as places wherein he sold goods and carried on other business, and the stone house as a place for storing goods. In one of the stores Boisot carried on business as a broker and druggist, until about October 14, 1875, defendant Stewart having been his partner in the drug business from August 1 until October 14, 1875, when the partnership terminated. In the other store Boisot and defendant Gowen carried on the tobacco and variety business, as partners, the latter having assumed the management in consideration of the partnership, using the store without paying much rent. This partnership continued from some time in July until October 9, 1875, and thereafter Gowen carried on the business in the same store on his own account, but it does not appear that he paid Boisot any rent. All the buildings and improvements mentioned were, at the time of making the homestead declaration, and now are, on said lot. The whole premises, including the land and buildings, have always been, and now are, worth less than five thousand dollars. Some time after said judgment was docketed, to wit: about November 8, 1875, Boisot and wife duly conveyed the whole property to Samuel Heitsher. This conveyance was recorded in the office of the county recorder of Lyon county, November 19, 1875. Heitsher leased the premises to respondents November 19, 1875, and they are in possession as his tenants. The value of the rents since July 31, 1876, the date of appellant's deed from the sheriff, until judgment in this case was ninety-five dollars per month.

As conclusions of law, the court found that no part of the premises described in plaintiff's complaint was subject to sale under his execution, for the reason that they were all homestead property of said Boisot and wife, the grantors of defendants' lessor; that plaintiff was not entitled to recover either possession or rents.

Judgment was entered accordingly, and this appeal is taken therefrom.

The only question for our consideration is as to the extent of Boisot's homestead. Counsel for appellant claim that it only embraced the dwelling-house and the out-buildings and appurtenances used immediately in connection therewith, together with the land upon which they stand; while respondents' counsel contend that it included the whole property described in Boisot's declaration of homestead, which is the same as that described in the sheriff's deed and in the complaint in this action.

Counsel for appellant admit the correctness of the decision in the case of *Clark* v. *Shannon* (1 Nev. 569), under the statute of 1861, but urge that under the statute of 1864-5 a different rule must prevail. We shall examine that case in connection with both statutes, with the view of ascertaining whether or not there is such a difference between the two statutes as to work the radical change claimed by counsel for appellant. Homestead exemptions as to extent and character, depend entirely upon the constitution and statutes. They were unknown under the common law. The constitutions and statutes of the different states being unlike ours, as a rule, the decisions of other courts upon the subject in hand furnish few authorities that can be followed here.

The case of *Gregg* v. *Bostwick*, 33 Cal. 225, referred to and greatly relied on by counsel for appellant, was rendered when the statute of that state in relation to homestead exemptions was like ours. We shall examine that case hereafter.

It is said by counsel for appellant in their brief, "that all the sections of the act of 1861, upon which *Clark* v. *Shannon* was decided, are left out of the act of 1864–5," and hence it is claimed that the case referred to is not an authority in this case. If the premises assumed by counsel are correct, their conclusions certainly follow; because respondents' rights depend upon the last named statute, and that decision was based upon the statute of 1861, although *Clark* v. *Shannon*, and *Goldman* v. *Clark* (1 Nev. 607), were

rendered more than eight months after the statute of 1864-5 was in force.

It is also said by counsel for appellant, that the legislature of 1864-5 left out certain provisions of the act of 1861 for the purpose of avoiding the construction adopted in *Clark* v. *Shannon*. If such are the facts, it is the duty of this court to so declare. A comparison of the two statutes will best show the intention of the legislature. It may be well to notice preliminarily, however, that at the session of the legislature of 1864-5 the constitution of this state was in force, and that section 30, article iv, required laws to be enacted providing for the recording of homesteads within the county in which the same should be situated. Such provision was made in section 1, statute of 1864-5. In the same law nearly all the provisions of the old law were re-enacted; but those seeming to allow the execution debtor to claim at least one acre, although of greater value than five thousand dollars, were left out of the new law, and with good reason. They were inconsistent with section 1. They made an important and oftentimes unnecessary distinction between one person owning an acre and another owning more, although the property of each was worth more than five thousand dollars. The estate of the latter could be divided so as to deprive the owner of a greater portion of his last acre, if the balance was worth five thousand dollars, while the former could hold a full acre, except in case of sale of the whole. If a homestead exceeded one acre, and the land and dwelling-house and appurtenances thereon were worth more than five thousand dollars, a portion less than an acre in compact form might have been set off as the homestead, if that portion, with the dwelling-house, etc., was worth five thousand dollars; but if a homestead did not exceed an acre, although that acre, with the dwelling-house, etc., was of greater value than five thousand dollars, the portion representing the excess of five thousand dollars in value could not be sold, and the only remedy of the plaintiff was to sell the whole, and take the balance of the proceeds of the sale, after paying the defendant five thousand dollars. Thus it will be seen that the statute of 1861 made a useless,

unjust distinction between homestead claimants. We think the facts just stated caused the legislature to change the law of 1861 in 1864–5. We think further, that if the legislature had intended to make the radical change claimed by counsel for appellant, such intention would have been made plain; the language of the first section defining a homestead, would have been changed so as to show the intended modification. They would not have re-enacted the significant words: "The homestead, consisting of a quantity of land, together with the dwelling-house thereon and its appurtenances, not exceeding in value the sum of five thousand dollars, * * * shall not be subject to forced sale on execution." Section 1 of the statute of 1861 did not specify the time or manner of selecting a homestead, and section 3 provided that the householder might notify the officer of what he regarded as his homestead at the time of making the levy, and that the remainder alone should be subject to sale. Section 1 of the law of 1864–5 does require the selection to be made in a certain way, and it is nowhere stated that it may be done in any other manner or at any time after levy. But in *Hawthorne and wife* v. *Smith* (3 Nev. 185), this court decided that property which possesses the characteristics of a homestead, may be selected and the declaration recorded, any time before sale under execution, and that the levy of an attachment will not prevent such selection.

So the only practical difference between sections 1 and 3 of the old law and section 1 of the new is, that the latter requires a declaration in writing containing the facts therein mentioned, to be acknowledged and recorded in the proper office sometime before sale, and the former do not contain this requirement.

Section 2 of each statute does not affect the question under consideration.

Sections 4 and 5 of the old law are embodied, substantially, in section 3 of the new, with the exception of the "one acre" provisions already referred to. In the present statute there is a new provision, "that when the execution is against the husband whose wife is living, the judge may,

in his discretion, direct the five thousand dollars to be deposited in court, to be paid out only upon the joint receipt of the husband and wife, and it shall possess all the protection against legal process and voluntary disposition of the husband as were the original homestead premises."

An impartial examination of the two statutes has convinced us that the legislature did not intend to change the policy of the former law in relation to the character and extent of homestead exemptions, and that is the principal question in this case, if not the only one.

In *Clark* v. *Shannon*, the defendant was residing upon lot four in a certain block in Washoe city, and on lot three in the same block, and immediately adjoining, he had a livery stable. The two lots made a square of one hundred feet. He executed a promissory note to plaintiff Clark for eight hundred dollars, and at the same time executed a mortgage to him on lot three, to secure its payment. Shannon was conducting his livery business on lot three, and his wife was living with him on lot four. Soon after the execution of the mortgage, Shannon filed in the proper office his declaration of homestead, including in the premises described both lots three and four; and after the passage of the present law providing for the registration of homestead claims, he had his declaration recorded. Clark filed his bill to foreclose his mortgage on lot three, and Shannon resisted the decree, on the ground that when he executed the mortgage the stable lot constituted a part of the homestead property, and was not bound by a mortgage in which his wife did not join. The only question raised in the court below, and the controlling one in this court, was, whether, under the circumstances of the case, the stable lot constituted a part of the homestead property. The court below held that the homestead was confined to the lot on which the dwelling-house was situated, and did not include a separate lot which was devoted to business purposes. This court, on appeal, held that the stable lot was a part of the homestead, and was exempt from execution, and also from the operation of the mortgage executed without the concurrence of the wife. Counsel for appellant say that "the old statute seemed to

contemplate the selection of the debtor of one acre of land, even if the dwelling was not on it." We think counsel are plainly in error. Under both statutes it is "the homestead, consisting of a quantity of land, together with the dwelling-house thereon and its appurtenances, not exceeding in value the sum of five thousand dollars," that is exempt; and under both, if property is selected which is not a part of the homestead, it may be sold. When section 3 of the statute of 1861 provided that if a levy was made upon the lands or tenements of a householder. whose homestead had not been selected and set apart, he might notify the officer ‚ * * * of what he regarded his homestead, * * * and the remainder alone should be subject to sale under such levy, it meant only that no property so selected should be sold, provided it was such as could be selected, and was exempt, as a homestead. It did not mean that other property should not be sold, although it was claimed and selected as a homestead. It was homestead property to the extent of five thousand dollars in value, and no other, that he had the right to select, and which the law protected. It was an unlimited quantity of land upon which the dwelling-house stood, the whole not exceeding the specified value, that was exempt, and all other lands were subject to sale then as they are now.

In *Clark* v. *Shannon*, after stating the substance of sections 1 and 3, the court say: "If the owner sets apart property worth more than five thousand dollars, steps may be taken by the plaintiff in execution to appraise the property, and either sell a portion thereof or sell the whole, reserving five thousand dollars of the proceeds for the debtor. It is also provided that no division of the homestead property shall be made without the assent of the owner, where it consists of one acre or less. 'Here, then, is the privilege to the debtor of selecting any land included in the homestead tract, provided it does not exceed five thousand dollars in value. There is no qualification as to the uses to which it may be applied.'"

It is difficult to see how the conclusion of the court expressed in the sentence quoted by us was at all dependent

upon the sentence immediately preceding, having reference to the "one acre" provisions of the statute of 1861. That conclusion applied to all homesteads, including those worth less than five thousand dollars; and yet the "one acre" provision did not take effect unless the property claimed was worth more than five thousand dollars. If the property was of homestead character, and was of less value than five thousand dollars, it could have been claimed and held as a homestead, whether there was one acre or more or less.

The most that can be said of the "one acre" provision is, that if a homestead happened to contain no more than one acre, and was worth more than five thousand dollars, the quantity in excess of five thousand dollars in value could not be sold, and the creditor was compelled to sell the whole. But we fail to see how the elimination of those useless, unjust provisions in any manner influenced the court in arriving at their conclusions upon the general policy of the law.

The court says, further: "Had the lots been levied on, can there be any doubt but that the defendant, Shannon, might have notified the sheriff that he claimed them as a homestead? If he had done so, it appears to us they could not have been divided. It is admitted both together are of less value than five thousand dollars. Both together contain less than an acre."

Why could it not have been divided? Because it was a part of the homestead, as well as because there was less than an acre, and in either case because it was worth less than five thousand dollars. If it was a part of the homestead, being of less value than five thousand dollars, no part could have been sold if the "one acre" provisions had not been in the law; and if it was not a portion of the homestead it could have been sold, because the homestead law did not apply to it. The fact is the court treated the stable lot as a part of the homestead, and having done so, the conclusion was irresistible that the mortgage could not become an incumbrance upon the property without the joint action of the wife, as required by law. We agree with counsel for appellant that property which does not possess

a homestead character cannot be made such by filing a dec-
laration claiming it as a homestead, and the same was true
under the old law.  If the stable lot was not a portion of
the homestead, under the statute, it was idle to claim it and
have it recorded as such.  If it was a part of it, then claim-
ing it and having it recorded secured its exemption; and it
having been of less value than five thousand dollars, it was
a matter of no consequence whether there was one acre or
more or less.  Had it been true that the stable lot could
not be held as a part of the homestead because it was not ap-
purtenant to the house, or because it was devoted to busi-
ness purposes, certainly the court would not have held
against the validity of the mortgage, either because there
was less than an acre in the two lots, or because it was worth
less than five thousand dollars; nor would it have said, as
applicable to that case, that "the law seems to contemplate
that the debtor shall not, under any circumstances, be com-
pelled to accept less than one acre of land for his home-
stead, although half that quantity might be worth five
thousand dollars."

Having treated the stable lot as a part of the homestead,
the court stated as an additional reason for its decision
against the plaintiff, that the defendant had the right to
claim at least an acre, if the whole was of less value than
five thousand dollars, and therefore the property could not
be divided.  We think the decision of the court did not in
any manner necessarily depend upon the "one acre" pro-
visions of the statute of 1861.  The present statute, in all
essentials showing the policy of the legislature, is the same
as that of 1861.  Section 1, in stating what a homestead
shall consist of, is precisely the same in both laws, and the
provisions requiring five thousand dollars to be paid to the
debtor in case of sale of the homestead property, is the
same in both.  In the present statute, the claimant is re-
quired to insert in his declaration, among other things, that
"it is his intention to use and claim the same as a home-
stead;" but how he shall use it "as a homestead," depends
upon the statutory definition of that word, the uses required
by the act, and the property that can be held as such.  The

statute requires him to use it as a homestead, but allows
him to select any quantity of land upon which his
dwelling-house stands, if the whole does not exceed five
thousand dollars in value. If a man with his family owns
and resides upon a ranch of five hundred acres, and uses it
in the ordinary way for the purposes of profit, he can hold
the whole, with the house and barns thereon; if the whole
property is within the maximum limit as to value. Shan-
non, in *Clark* v. *Shannon,* used the stable for the purposes
for which it is built. In our opinion, any property which,
as used, is exempt as a homestead, is "used as a home-
stead," and that any property which was exempt under the
old law is equally so under the present statute. We do not
think the legislature intended to exempt simply the dwell-
ing-house with its necessary or convenient appurtenances.
It is not more necessary to favor a family with shelter than
their bodies with clothes, and their stomachs with food.
The legislature did not intend to exempt five thousand dol-
lars, as so much money, but the intention was, in our
opinion, to protect that amount of realty if it is in one
body, and altogether it makes up what is home. And the
law-makers intended to treat all alike who are entitled to
this favor. They told the farmer that he should be pro-
tected against the forced sale of his ranch and his house
and barns, so long as the whole are not worth more than
five thousand dollars. If to-day, his modest house and a
few acres of land are worth no more than one thousand
dollars, he is assured that if he will practice industry
and economy, and thereby save four thousand dollars more,
he can, with that, purchase additional lands, or enlarge his
house, or do both, and in either case his property cannot
be taken from him, nor can he dispose of it without the
joint deed of himself and wife. Shall it be said then, un-
less the law compels the confession, that an industrious me-
chanic who owns a town lot upon which is his cheap dwelling,
cannot invest his savings in a shop upon another portion of
the lot, and call to his aid steam or water power, if he does
not pass the five-thousand-dollar limit, without losing the
law's protection, not only as to the shop, but even the land

upon which it stands? The shop is in fact a part of the home place, and as important a part as the house itself. The land upon which it is built is a part of the house lot, and the dedication of that to homestead uses carries with it the tenements and hereditaments thereon. (C. L. 302.) In some states, where the quantity of land allowed as a homestead has been limited by law, but the value has been left unlimited, the courts have felt it their duty to construe the law as favorably as possible to creditors, for the reason that in such cases a dishonest debtor can enhance the value of his property to an unlimited extent, and still hold it from his creditors. But where the value is limited, as in this state, such danger does not exist. Besides, the exemption does not extend to any vendor's, mechanic's or laborer's lien.

Counsel for appellant assert that the language of section 1 of the present law clearly shows that no building can be claimed as a homestead, except the residence and its appurtenances, for the reason that the legislature has expressed the dwelling-house as exempt, and such expression excludes all other buildings.

When counsel brought this action they described the land claimed by plaintiff by metes and bounds, but they did not describe or mention any of the buildings thereon, for the reason that a judgment for the land would carry the buildings. So, in the statute, an exemption of a "quantity of land" would exempt the buildings thereon also; but the legislature did not intend to exempt any lands except those that are impressed with the homestead character, that is to say, those upon which the dwelling-house is situated. We think the reason why the dwelling-house was mentioned, was for the purpose of fixing the locus and extent of the exempted property, including the dwelling, etc., and that in mentioning that building the legislature did not intend to exclude others, except for the reason that they are not a part of the homestead.

Counsel refer us to *Gregg* v. *Bostwick*, 33 Cal. 220, and other cases from that state which follow the decision named. Our present homestead act is like the one in force there,

when that decision was rendered, and we are urged to adopt
the reasoning and policy of that opinion in this case, "as
we have no decisions of our own giving the law a different
construction." That decision was not rendered until after
the passage of our present law, nor until after the decision
of this court in *Clark* v. *Shannon.* So if our law was copied
from the California statute, there is no presumption that the
construction subsequently given to it by the supreme court
of that state was adopted by our legislature. Although that
case differs very materially from this, as will be seen from
an examination of the findings, and although we agree with
much of the reasoning of that court and many of its conclu-
sions, we can by no means adopt it as a whole, for two rea-
sons: first, should we do so, we should overthrow the adju-
dications of this court acquiesced in for a period of twelve
years as to the true policy of the homestead law, and under
which property and property rights have been acquired; for
no impartial reader can conclude, after examination, that
heads of families, under the present law, are deprived of
any of the privileges that were granted to them under the for-
mer statute. Second, we are satisfied with the construction
given to the law by our predecessors. Appellant's construc-
tion would strip every ranchman of his land outside of that
upon which his dwelling and its appurtenances are situated,
because his farming lands are not more "necessary or con-
venient," for home purposes, than are the stores to respond-
ents in this case. The farm lands and barns are surely
convenient and necessary; they assist in the support of the
family; but they are neither, in the sense of the word
"homestead," as used by counsel for appellant; they are
neither, for the purpose of affording a family shelter; but
they are both, as we think, when used in the sense intended
by the legislature, as interpreted in *Clark* v. *Shannon.*

The judgment of the court below is affirmed.