FOX *v.* BRANNAN.

HOMESTEAD—EXEMPTIONS—BANKRUPTCY—APARTMENT IN PREMISES
OCCUPIED BY BANKRUPT.

Homestead to the value of $1,500 extended to bankrupt's entire premises, consisting of three-story frame house, in which bankrupt occupied third floor and rented three apartments on other two floors, and creditors were entitled only to excess over and above such exempted value, which, under the circumstances, could only be reached by a sale of the premises pursuant to statute (Const. 1908, art. 14, § 2; 3 Comp. Laws 1929, §§ 14608, 14615, 14616).

NORTH and BUTZEL, JJ., dissenting.

Appeal from Genesee; Black (Edward D.), J. Submitted October 11, 1939. (Docket No. 117, Calendar No. 40,599.) Decided February 14, 1940.

Bill by William Fox against Clinton C. Brannan and others for an accounting and to clear title to property. From decree rendered, defendant Brannan appeals. Reversed.

*Shapero & Shapero* (*Carlyle Michelman,* of counsel), for plaintiff.

*Ralph M. Freeman,* for defendant.

McALLISTER, J. Plaintiff was a purchaser at a bankrupt sale of the trustee's interest in a certain three-story frame house owned by defendant bankrupt. Homestead exemptions were claimed by defendant, and the trustee sold the property subject to such exemptions.

The dimensions of the building in question are 26′ x 36′, located on a single lot. There is one apartment on the first floor, consisting of five rooms and a bath. On the second floor are two apartments, each consisting of three rooms and a bath. Defendant lives on the third floor which extends over the entire house and consists of a large room, with toilet, wash bowl, and kitchen facilities. There is no question but what defendant has no other property and occupies the premises aforesaid as a home. A front stairway leads to the downstairs apartment, and a single stairway at the side of the house leads up to the second and third floors and also provides another entrance for the downstairs apartment. The basement is occupied by the defendant, except that tenants in the apartments have laundry privileges there; each tenant has a right to use a locker installed in the basement. There is a three-car garage on the premises, partitioned so that there is a room for a single car in one part, and the remainder is capable of housing two cars.

A bill was filed by plaintiff for an accounting of the proceeds of rents from the apartment lessees which have been paid to defendant since the bankrupt sale, and for a decree adjudging plaintiff to be the owner of the aforesaid apartment. The trial court decreed that plaintiff and defendant were tenants in common of the premises, but that defendant has no interest in any of the apartments, and that defendant is entitled to the third floor of said house which is declared to be his homestead; that while plaintiff and defendant are cotenants of the premises, nevertheless plaintiff has no dominion over the third floor, occupied by defendant as a homestead, nor has the said defendant any dominion over the premises occupied by the apartment tenants; and that both parties are required to "justly bear and

pay all portions of expenses that may be incurred in connection with the operation of said apartment house, such as the furnishing of light, heat, gas and water.'' Defendant was also obliged to account to plaintiff for rentals received from the apartments subsequent to the bankrupt sale. The only question before us, therefore, is whether defendant's homestead in this house, divided into four apartments, extends to the entire premises.

The Constitution, 1908, art. 14, § 2, provides:

''Every homestead of not exceeding forty acres of land and the dwelling house thereon and the appurtenances to be selected by the owner thereof and not included in any town plat, city or village; or instead thereof, at the option of the owner, any lot in any city, village or recorded plat, or such parts of lots as shall be equal thereto, and the dwelling house thereon and its appurtenances, owned and occupied by any resident of the State, not exceeding in value fifteen hundred dollars, shall be exempt from forced sale on execution or any other final process from a court.''

Section 14608, 3 Comp. Laws 1929 (Stat. Ann. § 27.1572), provides:

''A homestead, consisting of any quantity of land not exceeding forty acres, and the dwelling house thereon and its appurtenances, to be selected by the owner thereof, and not included in any recorded town plat or city or village, or instead thereof, at the option of the owner, a quantity of land not exceeding in amount one lot, being within a recorded town plat or city or village, and the dwelling house thereon and its appurtenances, owned and occupied by any resident of this State, not exceeding fifteen hundred dollars, shall not be subject to forced sale on execution, or any other final process from a court, for any debt, or debts growing out of or founded upon contract, either express or implied.''

With regard to this case, the limitations upon the right of plaintiff to claim a homestead not exceeding $1,500 in value are that the premises must be a dwelling house; and that it must be owned and occupied by the claimant.

A homestead may be claimed upon premises used partly for business and partly for a dwelling. *King v. Welborn,* 83 Mich. 195 (9 L. R. A. 803). Where a building was used as a hotel which claimant owned and in which he resided, although a part thereof was used for business purposes as a barber shop, it was held that such premises were a homestead, and that if the value thereof exceeded $1,500, a lien in favor of creditors beyond such value attached, and that a sale afforded the only means of reaching the excess. *Lamont v. LeFevre,* 96 Mich. 175.

In the case of *In re Robison,* 215 Fed. 662, homestead claimants owned a three-story building with 24 bedrooms, equally divided between the second and third floors; a restaurant on the first floor was operated by a third party; five rooms of the premises were occupied by the homestead claimants; the other rooms were used for hotel purposes. In a proceeding in bankruptcy, the court held the entire premises exempt as a homestead, citing as authority, among other cases, *King v. Welborn, supra.*

"The weight of authority is to the effect that if a building is used by a debtor as his family residence, it may be his homestead, and exempt as such, notwithstanding a part of it may be leased to others for residence or business purposes." 29 C. J. p. 809.

"If the property comprising his homestead is worth more than $1,500, the statute provides a way by which he may receive the value of his exemption, and his creditors the balance to apply on his debts." *King v. Welborn, supra.*

See 3 Comp. Laws 1929, §§ 14615, 14616 (Stat. Ann. §§27.1579, 27.1580).

*Dyson* v. *Sheley,* 11 Mich. 527, referred to by Mr. Justice Butzel in the accompanying opinion, is similar in some degree to the instant case; but we have concluded not to follow the rule therein generally stated, in the future.

We are of the opinion that defendant's homestead to the value of $1,500 extended to the entire premises in question. Creditors, or the trustee in bankruptcy acting in their behalf, were entitled only to the excess over and above this homestead value, which in this case could be reached only by a sale of the premises pursuant to the statute.

Decree vacated, with costs to defendant.

Sharpe, Potter, and Chandler, JJ., concurred with McAllister, J.

Potter, J. The question involved is the right of defendants to an exemption.

In *Beecher* v. *Baldy,* 7 Mich. 488, it was said:

"It is the *land,* including the dwelling-house and appurtenances, and constituting a homestead in fact, owned and occupied by the debtor, and nothing else, which the Constitution exempts. And to bring it within the designation of a homestead, which the Constitution, of its own force, exempts, it must possess all the descriptive features of the homestead described in the Constitution as *exempt.* These are as follows: 1st. It must contain the dwelling-house and its appurtenances, without which it could not be a homestead in fact, under any definition. 2d. It must not exceed the quantity limited by the Constitution. 3d. It must be owned by the party claiming it. 4th. It must be occupied by him as a homestead; and 5th, it must not exceed in value $1,500. The last requisite is just as much a matter of description as

either of the others. * * * If, * * * when reduced
in quantity as far as divisible, * * * it still exceeds
the specified value, it is not one of the homesteads,
the forced sale of which is prohibited by the Consti-
tution; and cannot, therefore, be exempt by the
operation of that instrument alone. The Constitu-
tion has exempted a homestead of *a certain descrip-
tion.* Where the homestead does not answer this
description, it is competent for the legislature to
exempt something out of it, or in lieu of it, as an
equivalent in value.''

In that case there was involved the question of the
application of the constitutional provision of 1850
(art. 16, § 2) to the statutory exemption fixed by Act
No. 109, § 1, Laws of 1848, which provided:

''That a homestead, consisting of any quantity of
land not exceeding forty acres, and the dwelling
house thereon and its appurtenances, to be selected
by the owner thereof, and not included in any re-
corded town plat or city or village, or instead there-
of, at the option of the owner, a quantity of land not
exceeding in amount one lot, being within a recorded
town plat or city or village, and the dwelling house
thereon and its appurtenances, owned and occupied
by any resident of this State, shall not be subject
to forced sale on execution, or any other final
process from a court, for any debt, or debts growing
out of or founded upon contract, either express or
implied, made after the third day of July, A. D.
1848.''

The court was particularly interested in the limi-
tation placed by the Constitution upon this statute.
It was said:

''Under the statute, the property described was
exempt without reference to its value, and under it
the debtor might withhold from his creditors prop-
erty worth a hundred thousand dollars or more.''

The Constitution of 1850, art. 16, § 2, limited the exemption to homesteads not exceeding in value $1,500:

"Or instead thereof, at the option of the owner, any lot in any city, village, or recorded town plat, or such parts of lots as shall be equal thereto, and the dwelling house thereon, and its appurtenances, owned and occupied by any resident of the State, not exceeding in value fifteen hundred dollars, shall be exempt from forced sale on execution, or any other final process from a court, for any debt contracted after the adoption of this Constitution."

The statute (3 Comp. Laws 1929, § 14608 [Stat. Ann. § 27.1572]) provides for the exemption of "a quantity of land not exceeding in amount one lot, being within a recorded town plat or city or village, and the dwelling house thereon and its appurtenances, owned and occupied by any resident of this State, not exceeding in value fifteen hundred dollars." This statute says nothing of hotels, multiple dwellings or flats. It covers exemptions. If the land, dwelling house and its appurtenances are worth more than $1,500, it is not a homestead within the constitutional definition. The Constitution has exempted a homestead of a certain description. Where the homestead does not answer this description, it is competent for the legislature to exempt something out of it, or in lieu of it, as an equivalent in value.

In *Dyson* v. *Sheley*, 11 Mich. 527, where the parties built a double house, one part of which had been used and occupied by tenants for several years, it was held the homestead exemption was designed to protect the owner of the property in its use as a dwelling and that it had no application to the land which was leased to another. The law does not exempt property to the amount of $1,500, whether

designed as a homestead or not. It merely covers so much as comes within that designation, although worth but a trifle. *Its object is to preserve the home, and no more.*

In *Orr* v. *Shraft,* 22 Mich. 260, Shraft and wife occupied the upper story of the building. The court held the building was not occupied exclusively as a dwelling, but was occupied as a homestead. The lot and building were worth about $1,000, and the right to an exemption other than that based upon the wife's occupancy was not raised.

In *King* v. *Welborn,* 83 Mich. 195 (9 L. R. A. 803), the building was occupied by petitioner's family conducting a hotel therein. The question was whether he was entitled to an exemption. Defendant insisted the statutory exemption was limited to one lot, and that this property covered two lots; hence, no homestead could be claimed without a selection and designation of some portion as such. But the court, in passing upon this question, said:

"One who has constructed his house, which he occupies as a homestead, upon two lots, is not thereby to be deprived of his exemption. If the property comprising his homestead is worth more than $1,500, the statute provides a way by which he may receive the value of his exemption, and his creditors the balance to apply on his debts."

In *Lamont* v. *LeFevre,* 96 Mich. 175, the property was built on two lots. A bill was filed to foreclose a lien. The court said these parcels should be treated as one, and the lien attached to both. Mrs. LeFevre claimed rights to a homestead in the premises. The court held that, to the extent of $1,500, it was exempt from the lien, and "beyond that sum the lien attaches, and, as the premises cannot be divided, a sale affords the only means of reaching the excess."

In *Fitzsimons* v. *Kane,* 245 Mich. 246, the bill
sought to subject the land of Georgia Kane to sale
under execution, and "the proofs disclosed that she
occupied the premises as her home. If the owner
of property makes such property his home in fact
it is his homestead, needs no formal declaration as
such, and judgment creditors must recognize its
character and respect its extent. * * * The fact
that she occupied the premises as her home consti-
tuted notice to plaintiff of the homestead character,
and was evidence in and of itself of election to have
homestead rights. * * * Under a bill in aid of ex-
ecution, the court has power and the duty to protect
the homestead right, even if the subject matter is
not presented until the decree is being reduced to
form."

The statute of 1861, passed after *Beecher* v.
*Baldy, supra,* was decided, provides:

"Whenever the homestead of any debtor in any
such case, shall exceed in value the amount of fifteen
hundred dollars, the debtor shall not for that reason
lose the benefit intended to be secured to him or her
by this chapter; but in all such cases, when in the
opinions of the creditors or officer holding an ex-
ecution or decree as aforesaid, against such house-
holder, the premises claimed by him as exempt are
worth more than fifteen hundred dollars, such officer
shall summon six persons qualified to act as jurors,
who shall upon oath, to be administered to them by
said officer, appraise the said premises; and in case
the value thereof shall be more than fifteen hundred
dollars, and cannot be divided, they shall make and
sign an appraisal of its value, and deliver the same
to the officer, who shall deliver a copy thereof to the
debtor, or to some of his family of suitable age to
understand the nature thereof, with a notice thereto
attached, that unless the said debtor shall pay the
said officer the surplus, over and above the fifteen

hundred dollars, or the amount due on said execution or decree, within sixty days thereafter, that such premises will be sold.'' 3 Comp. Laws 1929, § 14615 (Stat. Ann. § 27.1579).*

The statute further provides:.

''In case such surplus, or the amount due on said execution or decree, shall not be paid within the sixty days, it shall be lawful for the officer to proceed to advertise and sell the said premises, and out of the proceeds of said sale to pay such debtor the said sum of fifteen hundred dollars, which shall be exempt from execution for one year thereafter, and apply the balance on said execution: *Provided, however,* That no sale shall be made in the case last mentioned, unless a greater sum than fifteen hundred dollars shall be bid therefor, in which case the officer may return said execution for want of property, or report the facts to the court in which said decree was rendered, as the case may require.'' 3 Comp. Laws 1929, § 14616 (Stat. Ann. § 27.1580).

I agree with Mr. Justice McAllister.

Bushnell, C. J., and Chandler and Wiest, JJ., concurred with Potter, J.

Butzel, J. (*dissenting*). It is fundamental that the right to a homestead given by the Constitution and by statute is to be liberally construed. See authorities collected in 114 A. L. R. 209. That right, however, is limited to property occupied by the homestead claimant—the law requires that there be both ownership and occupation by the homestead claimant. *Wisner* v. *Farnham,* 2 Mich. 472; *Beecher* v. *Baldy,* 7 Mich. 488; *Herschfeldt* v. *George,* 6 Mich.

---

* The section above quoted is Act No. 314, chap. 23, § 80, Pub. Acts 1915 (the judicature act), which had substantially reenacted section 2 of Act No. 248, Pub. Acts 1861, amendatory of Act No. 109, Pub. Acts 1848, the only change being from ''said chapter and act'' to ''this chapter'' in the fifth line.—Reporter.

456; *Fitzsimons* v. *Kane,* 245 Mich. 246. In *Dyson* v. *Sheley,* 11 Mich. 527, it was held that a levy could properly be made on the half of a double house that was occupied by a tenant although the homestead claimant owned the entire building and claimed a homestead interest therein. Justice Campbell said:

"Under our Constitution and laws a homestead, in order to be exempt, must be '*owned and occupied*' by a citizen of this State. This language clearly implies that the premises must have been set apart as a home, and for the purposes of the owner or his family. It is not necessary in the case before us to inquire whether land thus set apart may or may not be leased temporarily nor whether, if all the land claimed is covered by a dwelling used by the family, separate stories over or under their domicile may not be used or rented for other purposes. The cases deciding these points, to which reference was made on the argument, are not applicable to the case before us. Here the complainant built upon his lot in such a way as to show he designed it for two families, and not for one. The portion levied on has been leased for several years. It is plain that this portion could never have been properly regarded as a homestead. The law does not exempt property to the amount of $1,500, whether designed as a homestead or not. It merely covers so much as comes within that designation, although worth but a trifle. Its object is to preserve the home, and no more."

In *Fitzsimons* v. *Kane, supra,* the issue of limiting the claimant to the flat actually occupied in the duplex was not raised. It does not, therefore, overrule *Dyson* v. *Sheley, supra.* Defendant relies upon *Orr* v. *Schraft,* 22 Mich. 260; *King* v. *Welborn,* 83 Mich. 195 (9 L. R. A. 803), and *Lamont* v. *LeFevre,* 96 Mich. 175. In all three cases the buildings were actually occupied by the homestead claimants. In

*Orr* v. *Schraft, supra,* the upper floor of the building
was occupied by the homestead claimant for living
quarters, while the lower floor was used by him for
a postoffice and some other official business purposes.
In *King* v. *Welborn, supra,* the building in question
was a small hotel in which the homestead claimant
lived and conducted a hotel business.  It was held
that hotel keepers were not to be denied the benefit
of the exemption when they owned and occupied the
land with their families and had no other home.
*Lamont* v. *LeFevre, supra,* was somewhat similar
and the decision was based upon *King* v. *Welborn,
supra.*  The foregoing opinion relies in part upon
*In re Robison,* 215 Fed. 662, also a hotel case.  I do
not think such cases should control the facts before
us now.

In a leading case in Iowa, *Rhodes* v. *McCormick,*
4 Iowa, 368 (68 Am. Dec. 663), it was claimed that
an entire three-story building was exempt.  The first
floor and cellar were rented as a store.  The second
floor had previously been rented by a physician but
was occupied together with the third floor by claim-
ant at the time of suit.  The court said:

"A defendant cannot, by calling a house a home-
stead, make it such.  He cannot, by occupying or
using one room in a building containing forty, ex-
empt the entire premises.  Neither can he, by using
all the rooms of the second and third stories as a
homestead, exempt from liability the storerooms
that may be below, but which have no kind of con-
nection with the homestead as such.  What particu-
lar part of a building is in fact used as a homestead
—as the place for the family—as the house,—is, as
a general thing, easily ascertained.  It is such parts
as are thus used in good faith, that the law designs
to exempt.  The parts are the 'house' within the
meaning of the section of the code, which provides
that 'the homestead must embrace the house used as

a home by the owner thereof.' But it is not to embrace all parts of a building which are not used as a home. All such parts, not thus used, are no more included within the homestead home, than if they were in different buildings. Those portions used as a home, when ascertained, are to be treated as a house, having a separate locality, disconnected from the other parts of the building."

The difference between a hotel occupied, operated, and maintained by a claimant and an apartment house is apparent. In the case of an apartment house the claimant as lessor does not occupy the apartments leased by him to others. They are rented out for a term. The apartments are independent of each other. As a rule the owner occupies only one apartment. His homestead right should be limited to what he occupies for his own dwelling purposes. To hold otherwise would be to go far beyond the intent and purpose of the law, as well as its letter.

The question was squarely raised in *Potter* v. *Clapp,* 203 Ill. 592 (68 N. E. 81, 96 Am. St. Rep. 322), and I am in accord with the very apt statement of the Illinois court:

"In case a householder occupies a flat in a flat building, or an apartment in an apartment building, as a homestead, his residence is as much disconnected from the other flats or apartments located in said building as though the portion thereof occupied by him was located upon a different lot or under a different roof; and while in a case like this it might work no great harm to hold that the widow, after the death of the householder, might rightfully retain the possession of the entire building until her homestead was assigned, if the principle were applied to a building containing, as is often the case in large cities, many flats or apartments, it would lead to absurd results."

The court cited *Rhodes* v. *McCormick, supra,* and *Mayfield* v. *Maasden,* 59 Iowa, 517 (13 N. W. 652). See, also, 2 Freeman on Executions (3d Ed.), p. 1300, § 241, and Herman on the Law of Executions, p. 124.

The decree of the lower court was correct in holding that the homestead exemption did not apply to the entire building, and should be affirmed, with costs to the appellee.

NORTH, J., concurred with BUTZEL, J.