IONE JACKMAN, Trustee in Bankruptcy for the Estate of Fuz Nance, dba WINNEMUCCA RENT-ALL, Appellant, v. FUZ NANCE, dba WINNE-MUCCA RENT-ALL, Debtor, Respondent.

No. 23526

July 29, 1993                                        857 P.2d 7

*Bible, Hoy, Trachok, Wadhams & Zive* and *Terrill R. Dory,* Reno, for Appellant.

*Malikowski & McCoy,* Reno, for Respondent.

## OPINION

*Per Curiam:*

Respondent and debtor Fuz Nance, dba Winnemucca Rent-all, conducted an equipment rental business from a 6,380 square foot

building. Over several years, Nance constructed a modest residence inside the building while continuously residing in the building. Nance homesteaded the entire building in which he resided and later filed bankruptcy. Ione Jackman, the appellant and trustee in bankruptcy for the estate of Fuz Nance, dba Winnemucca Rent-all, objected to Nance's homestead claim. After a hearing, the bankruptcy court certified the pertinent question regarding the status of Nevada homestead law to this court.

## FACTS

In 1985, Nance, a disabled electrician, leased a 6,380-square-foot building at 201 East Second Street in Winnemucca for $625.00 per month. Throughout 1985, Nance lived in a trailer located inside the building where he was also constructing a 500-square-foot apartment intended for his place of abode. Between 1985 and early 1988, Nance developed and operated an equipment rental business in the building while continuing to expand his living area to approximately 1,200 square feet, including another bedroom, exercise room, laundry room and pantry. After receiving notice of a rent increase, Nance decided to purchase the building and did so in February of 1988 for $82,500.00, $75,000.00 of which was financed. The property was appraised in October 1987 as having a fair market value of $115,000.00.

In May of 1990, while struggling with both personal and business problems, Nance filed a homestead on the property. The following month, Nance sought relief under Chapter 13 of the Bankruptcy Code, which was converted to Chapter 11 in December 1990, and to Chapter 7 a year later. Jackman was appointed as Trustee following the conversion to a liquidation case under Chapter 7.

Jackman objected to Nance's claim of homestead and after a hearing, the court determined that there was merit to the position posited by each party. Specifically, Nance relied on Clark v. Shannon, 1 Nev. 568 (1865), and Smith v. Stewart, 13 Nev. 65 (1878), as examples of homestead protection accorded to "commercial buildings." Jackman relied upon cases arising in jurisdictions outside of Nevada and suggested that the Nevada cases are too antiquated to have significant meaning.

## DISCUSSION

The U.S. Bankruptcy court certified the following question for our review:

> May a Nevada judgment debtor properly claim as exempt, under NRS 21.090(1)(l) and NRS Chapter 115, premises

upon which he resides and conducts an equipment rental business?

The purpose of the homestead exemption is to preserve the family home despite financial distress, insolvency or calamitous circumstances, and to strengthen family security and stability for the benefit of the family, its individual members, and the community and state in which the family resides. These values are of greater importance to the polity than the just demands of those who may be financially disadvantaged as a result of the homestead exemption. *See* Matter of Estate of Dodge, 685 P.2d 260, 263 (Colo.Ct.App. 1984).

The homestead exemption, unknown to the common law, was given birth as a constitutional and statutory response to public policy and sentiment. *See* Smith v. Stewart, 13 Nev. 65, 68 (1878). Accordingly, the homestead exemption is extended or limited by the statute or constitutional provision which created it. *Id.* The wealth of case law concerning homesteads reflects a judicial tendency to construe homestead laws liberally in favor of the persons for whose benefit they were enacted. *See, e.g.,* Roberts v. Greer, 22 Nev. 318, 328, 40 P. 6, 7 (1895); Macumber v. Shafer, 637 P.2d 645, 646 (Wash. 1981) (homestead law to be liberally construed in favor of homestead claimant).

The relevant homestead statute, NRS 115.005(2), which was effective until January 1, 1992, provided in pertinent part that: "'Homestead' means the property consisting of either a quantity of land, together with the dwelling house thereon and its appurtenances, . . . to be selected by the husband and wife, or either of them, or a single person claiming the homestead." In addition, the homestead exemption extends to the claimant's equity in the homesteaded property up to a maximum of $95,000.00. NRS 115.010(2). A number of Nevada cases have addressed the homestead exemption in some form. However, the cases of greatest insight and significance on the subject continue to be Clark v. Shannon, 1 Nev. 568 (1865), and Smith v. Stewart, 13 Nev. 65 (1878).

The facts in *Clark* reveal a debtor who owned two adjacent lots, upon which was situated a dwelling and a livery stable, respectively. The sole issue on appeal was whether the stable and the lot upon which it was situated constituted a part of the homestead.[1] The *Clark* court concluded that the debtor could

---

[1]The statute relevant when *Clark* was decided provided "that the homestead, consisting of a quantity of land, together with the dwelling-house

select "any land included in the homestead tract, provided it does not exceed five thousand dollars in value. *There is no qualification as to the uses to which it may be applied.*" *Clark,* 1 Nev. at 570 (emphasis added). The creditor objected to the inclusion of the stable and lot in the homestead because it was used for a business purpose. The court in *Clark* was unpersuaded, responding that the fact that the property was devoted to a business purpose was of little significance. Specifically, the court declared that "*[t]he only limitation of the right to select the homestead land is that they shall not exceed five thousand dollars in value.*" *Id.* at 571 (emphasis added). Moreover, the court stated that since farm land can be included in the "quantity of land," a shop, stable, storehouse or hotel could also be claimed as part of the homestead. *Id.* Finally, the *Clark* court observed that it "would be a wise and humane policy" to protect an insolvent debtor in the "enjoyment of a cheap and modest house . . . together with adjacent lands or business houses as will enable him to decently support his family." *Id.*

Later, in Smith v. Stewart, 13 Nev. 65 (1878), the debtor claimed as a homestead, a dwelling-house, two buildings used as stores, and a stone house used for storing goods. The creditor argued that the primary objective of the legislature in enacting the homestead statute was to exempt a homestead consisting of the dwelling place of the family and not simply property having a value of up to five thousand dollars. The *Smith* court replied:

> The statute requires [the debtor] to use it as a homestead, but allows him to select any quantity of land upon which his dwelling-house stands, if the whole does not exceed five thousand dollars in value. If a man with his family owns and resides upon a ranch of five hundred acres, and uses it in the ordinary way for the purposes of profit, he can hold the whole, with the house and barns thereon; if the whole property is within the maximum limit as to value. . . . The legislature did not intend to exempt five thousand dollars, as so much money, but the intention was, in our opinion, to protect that amount of realty if it is in one body, and altogether makes up what is home.

*Id.* at 74-75. Furthermore, the court by way of illustration indicated:

> Shall it be said then, unless the law compels the confession, that an industrious mechanic who owns a town lot upon

thereon and its appurtenances, not exceeding in value the sum of five thousand dollars, to be selected by the owner thereof, shall not be subject to forced sale under execution." *Clark,* 1 Nev. at 570.

which is his cheap dwelling cannot invest his savings in a shop upon another portion of the lot, and call to his aid steam or water power, if he does not pass the five-thousand-dollar limit, without losing the law's protection, not only as to the shop, but even the land upon which it stands? The shop is in fact a part of the home place, and as important a part as the house itself. The land upon which it is built is a part of the house lot, and the dedication of that to homestead uses carries with it the tenements and hereditaments thereon.

*Id.* at 75-76. Finally, the *Smith* court indicated that the reason for mentioning the dwelling house in the homestead statute was merely "for the purpose of fixing the locus and extent of the exempted property, including the dwelling, etc., and that in mentioning that building the legislature did not intend to exclude others, except for the reason that they are not a part of the homestead." *Id.* at 76.

The two cases cited above reflect the policy of this state to provide a debtor with homestead protection which attaches to a "quantity of land" with the dwelling up to the amount of equity provided by the legislature, so long as any property claimed in addition to the bona fide dwelling, consists of land, appurtenances, hereditaments, tenements, etc., which are an integral part of the overall family enterprise.

There are essentially two prevailing views regarding the availability of the homestead exemption. The first view focuses upon the use of the property. Many of the jurisdictions adopting this view are bound by constitutional or statutory mandates indicating that the homestead will include a certain *quantity* of land and dwellings. The second view is that currently held by Nevada. That is, the "quantity of land" and the dwelling and other buildings are limited only by the total *value* of the homestead, regardless of use, provided the claimants actually reside on the premises and use it as their residence.

In many "use oriented" jurisdictions, the quantity of land allowed has been limited while not restricting the value which attaches to that land. In those circumstances, courts have construed the law so as to benefit creditors because of the debtor's possible abuse in protecting the specified quantity of land with an underlying value of great magnitude. However, that concern does not exist with respect to NRS Chapter 115 because the value of the homestead is limited. *See Stewart,* 13 Nev. at 76. The value limitation included in NRS Chapter 115 thus safeguards against the type of potential debtor abuse in the jurisdictions that emphasize homestead use.

The legislature has periodically revisited NRS Chapter 115 to adjust the value of the exemption and, more recently, to include

mobile homes within its ambit. Had the legislature chosen to limit the homestead exemption based upon a particular use, it certainly could have done so. Moreover, "the clear trend of authority in the courts argues for the preservation of the homestead exemption with respect to an owner's actual dwelling, even if such dwelling also serves as a business environment." Edward Leasing Corp. v. Uhlig, 652 F.Supp. 1409, 1417 (S.D.Fla. 1987).

With the above points in mind, we conclude that a homestead may be claimed upon premises used partly for business and partly for a dwelling. *See* Fox v. Brannan, 290 N.W. 353, 354 (Mich. 1940). Using a building partly for business purposes is not inconsistent with the claim of homestead protection, *provided it is and continues to be the bona fide residence of the family. See* Coca Cola Bottling Co. v. Feliciano, 114 P.2d 604, 606 (Cal.Ct. App. 1941). Therefore, if the dwelling is in fact the bona fide residence of the family and the value of the homestead exemption does not exceed the statutory amount, there is no qualification as to the uses to which the homestead may be applied. *See Clark,* 1 Nev. at 570. Moreover, since Nevada homestead law emphasizes value rather than use, any analysis or evidence of the proportion of value of the dwelling to the total value of the entire property included in the description of the homestead is of no legal significance.

We have respectfully concluded that in light of our ruling on the question addressed, none of the remaining questions need to be answered.