**In re Dolora Faye SULLIVAN, Debtor.**

**Bankruptcy No. BK–N–96–30929.**

United States Bankruptcy Court,
D. Nevada.

Sept. 20, 1996.

Lawrence L. Lozensky, Zephyr Cove, NV, for Debtor Dolora Faye Sullivan.

William A. Van Meter, Van Meter & Matteoni, Reno, NV, for Trustee Angelique L.M. Clark.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: TRUSTEE'S OBJECTION TO DEBTOR'S CLAIM OF EXEMPTION AND REQUEST FOR TURNOVER OF RENTAL INCOME

GREGG ZIVE, Bankruptcy Judge.

The Court, after reviewing and considering the Trustee's Objection to Debtor's Claim of Exemption and Request for Turnover of Rental Income, the Opposition filed by the Debtor, the testimony, demeanor and credibility of the Debtor and her former husband, and argument of counsel and after stating its findings of fact and conclusions of law orally on the record pursuant to FED.R.BANKR.P. 9014, 7052 and FED.R.CIV.P. 52(a), now incorporates its oral findings of fact and conclusions of law by reference and hereby enters its written Findings of Fact and Conclusions of Law as follows:

### FINDINGS OF FACT

1. The Debtor filed a voluntary Chapter 7 bankruptcy petition on May 15, 1996.

2. At the time the Debtor filed her bankruptcy petition she resided with three of her five children and her prospective husband, Russell Best, in a home located at 2336 Dawn Circle ("Dawn Circle property") in Carson City, Nevada. The Debtor had moved to the Dawn Circle property on May 1, 1996 before filing her petition and continues to reside at the Dawn Circle property. She moved to the Dawn Circle property from 3409 Vista Grande Boulevard ("Vista Grande property"), Carson City (Douglas County), Nevada, her former residence. She now seeks a homestead exemption for the Vista Grande property.

3. The Dawn Circle property is owned by Mr. Best. The Debtor resides at the Dawn Circle property with Mr. Best and her three children pursuant to a written one year rental agreement with a monthly rental $750.00. She has sometimes been unable to make the rental payment, but Mr. Best has not taken any steps to collect the unpaid rent or to terminate the tenancy. The written rental agreement with Mr. Best was not introduced as evidence. After close of testimony, and after the Court had orally announced its decision, the Court was advised by the Debtor's lawyer that the rental agreement might in fact be a month-to-month rather than an annual rental agreement. However, no evidence was proffered.

4. The Debtor owns the Vista Grande property which has a value scheduled at $104,000.00 and encumbrances of $37,000.00. On November 27, 1995, the Debtor filed a Declaration of Homestead pursuant to appli-

cable Nevada state law and claimed the equity in this property exempt in her bankruptcy case. The Trustee objected to the Debtor's claim of exemption on the ground that the Debtor did not live in the Vista Grande property at the time her bankruptcy petition was filed.

5. On or about May 1, 1996, approximately two weeks prior to the filing of the Debtor's bankruptcy petition and after moving to the Dawn Circle property, the Debtor rented the Vista Grande property to a third party for $750.00 per month on a month-to-month tenancy. The Debtor moved from this property and rented it to supplement her income and to minimize contact with her former spouse, Donald Sullivan, who lives within several hundred yards of the Vista Grande property.

6. The Debtor obtained a restraining order against her former husband when divorce proceedings were initiated several years before the Debtor moved to the Dawn Circle property. The restraining order expired approximately one month after it was entered. The Debtor has not sought any further restraining or protective orders against her former husband. The Debtor testified that her prospective spouse and owner of the Dawn Circle property, Mr. Best, has reservations about moving into the Vista Grande property due to continuing domestic disputes involving the Debtor and her former husband and the proximity of the Vista Grande property to the residence of the Debtor's former husband. Evidence was also presented indicating that the Dawn Circle property is larger and in better condition than the Vista Grande property.

7. Testimony was introduced by the Debtor and her former husband that it was the Debtor's intent to dismiss her bankruptcy case, move back to the Vista Grande property, and refile another bankruptcy case if the Trustee's objection to the Debtor's claim of exemption were sustained. This indicates to the Court that Debtor did not possess any intent to return to the Vista Grande property on May 15, 1996 but that she did intend to utilize the Vista Grande property as income producing property and not as her, or her family's, residence.

8. The Debtor maintains that her move from the Vista Grande property was temporary and that she intends to move back to the Vista Grande property at some indefinite time in the future. Based upon the evidence, the Court finds as a fact that the Debtor's move from 3409 Vista Grande Boulevard to 2336 Dawn Circle was not a temporary change of residency.

9. The Debtor intended on May 1, 1996 to make the Dawn Circle property her residence with her children and prospective spouse and that was her intent two weeks later, May 15, 1996, when she filed her petition. As a result, Debtor abandoned her Vista Grande homestead.

10. In the Court's experience, and pursuant to published articles regarding the Nevada Supreme Court's backlog of cases, 18 to 24 months would be required before that court could enter a decision if this matter were certified to it pursuant to NEV.R.APP.P.

11. To the extent any of the foregoing Findings of Fact should be considered to be conclusions of law, they should be construed as such.

### CONCLUSIONS OF LAW

1. Nevada law requires that a Debtor actually reside in property claimed as a homestead. *Jackman v. Nance,* 109 Nev. 716, 721, 857 P.2d 7, 10 (1993). Debtor abandoned her homestead rights in the Vista Grande property by moving her residence to the Dawn Circle property prior to the time of filing her bankruptcy petition. The Trustee's objection to the Debtor's claim of exemption is sustained.

2. A Debtor's right to a homestead exemption becomes fixed at the date of the filing of the petition. *Myers v. Matley,* 318 U.S. 622, 628, 63 S.Ct. 780, 784, 87 L.Ed. 1043 (1943).

3. Although NRS 115.040(2) provides that a homestead shall not be deemed abandoned in the absence of a recorded declaration of abandonment, the court concludes that NRS 115.040(2) is not exclusive. Neither does the statute create an irrebuttable presumption precluding the introduction of evidence to

establish that a debtor has in fact abandoned a prior homestead by making a permanent move to an alternate residence because one must reside on the premises declared to be the homestead.

▬ 4. Because this case involves an unsettled question in Nevada, this court must anticipate a ruling by the Nevada Supreme Court. "When a decision turns on applicable state law, and the state's highest court has not adjudicated the issue, the ... [federal] court must make a reasonable determination, based upon such recognized sources as statutes, treatises, restatements and published opinions, as to the result that the highest state court would reach if it were deciding the case." *Molsbergen v. U.S.*, 757 F.2d 1016, 1020 (1985). It would be inefficient and uneconomical to certify the legal issue in this case to the Nevada Supreme Court pursuant to Nev.R.App.P. 5.

A review of Nevada state law leads to the conclusion that the declaration of abandonment referred to in NRS 115.040(2) is intended to apply in situations when the declarant continues to reside on the property following recordation. It is axiomatic there can not be a homestead absent residence. Pursuant to NRS 115.020(2)(b) and (c), and the cases interpreting those provisions, when a declaration of homestead is filed the declarant must be residing on the premises with the intent to use and claim the property as a homestead. *McGill v. Lewis*, 61 Nev. 28, 35, 37, 40, 111 P.2d 537 (1941).

A declaration of abandonment as provided for by NRS 115.040(2) must be signed by the person "claiming the homestead." That provision of the statute anticipates the continued residence of the declarant upon the homestead. Vacating the premises, by definition, terminates the homestead and, except for a temporary absence, also destroys the intent required to use the premises as a homestead. Physically abandoning the property with the intent to do so permanently is the equivalent of recording a declaration of abandonment.

The only Nevada case that discusses a recorded notice of abandonment is *Estate of David Walley*, 11 Nev. 260 (1876). The issue in that case was whether the homestead exemption was available to a childless widow.

The Nevada Supreme Court held that the homestead exemption protected the widow. A declaration of abandonment had been recorded by the widow and her late husband. However, they continued to reside on the property following the recordation of the declaration. The court held the only effect of the abandonment "was to invest the husband with the power to alienate the premises or subject them to some specific lien during the continuance of the abandonment." *Id.* at 267.

When *Estate of David Walley* was decided in 1876, the provisions now found at NRS 115.010(3)(a) did not exist. That statute states that the homestead exemption does not extend to "[a]ny mortgage or deed of trust thereon executed and given....." NRS 115.010(3)(a). The Homestead Act effective when *Estate of David Walley* was decided provided that only a "mortgage or alienation to secure the purchase money, or pay the purchase money, shall be valid." Sec. 2, ch. 72, Stats. (1865) (codified as amended at NRS 115.010(3)(a)). The language now found in NRS 115.010(3)(a) appears to have been first included in Nevada's homestead statutes in 1879, after the *Walley* case was decided. Subsequent to 1879, not only were purchase money mortgages valid, but the exemption did not apply to "[a]ny mortgage or deed of trust." NRS 115.010(3)(a).

The Nevada Supreme Court noted in *Estate of David Walley, supra* at 262, that the declaration of abandonment was made and recorded because "such declaration being considered by the mortgagee necessary for his security." The Walley's intended to use the residence as security for a non-purchase money loan and without the declaration of abandonment, the mortgage would not have been valid for any purpose. Sec. 2, ch. 72, Stats. (1865). The language added to the Homestead Act in 1879 freed lenders from such a concern. Hence, a written declaration of abandonment is no longer required.

It is also interesting that the *Estate of David Walley* court noted in dictum that not only must a declaration of abandonment be required but that "[i]t may be that it is also

necessary for the parties to cease to reside on the premises." *Id.* at 267. However, the court did not have to resolve the issue because of its findings regarding the limited, and now irrelevant, effect of the declaration of abandonment.

The Nevada Supreme Court said that the Homestead Act exempted the homestead premises from liability from debts of the owner, "so long, at least, as he continues to be the head of the family." *Estate of David Walley, supra* at 264. Likewise, the premises are only exempt so long as they are the residence of the declarant.

In a case in which *Walley* was quoted and relied upon, *Nev. Bank of S.F. v. Treadway,* 17 F.887 (9th Cir.1883), the Ninth Circuit noted that in the case before it, there was not a claim that the husband and wife were not "living upon said premises as their homestead." *Id.* at 894.

That a homestead declarant reside upon the premises being claimed as exempt is a continuing requirement is shown by its emphasis in *Jackman v. Nance, supra* 109 Nev. at 721, 857 P.2d 7.

> Using a building partly for business purposes is not inconsistent with the claim of homestead protection *provided it is and continues to be the bona fide residence of the family.* (court's emphasis) (citations omitted).

Where a debtor, less than a week post petition, executed a declaration of homestead the day before she vacated the premises and granted another person a 30–day license to use the premises rent free, her attempt to avoid a judgment lien on the property was held by U.S. Bankruptcy Judge Robert C. Jones to have undercut her intention to use the premises as a homestead. *In re Zohner,* 156 B.R. 288, 291 (*Bankr.D.Nev.1993* ) Judge Jones found that it is implicit that the statements contained in the declaration be accurate. If not, the exemption would not apply. The factual issue was whether the debtor intended to use the premises as a homestead. There was no indication the debtor recorded a declaration of abandonment. The debtor's intent to reside on the premises was the critical question just as it is in the instant case.

Here, the Debtor vacated the premises two weeks before she filed her petition. Her absence was not temporary. Her intent was to live elsewhere with her family and prospective spouse. The Vista Grande homestead was abandoned and did not exist on the date she filed her petition. There was no requirement she record a declaration of abandonment because the Debtor no longer resided at the Vista Grande property; she was using it as an investment property.

■ 5. The Debtor's real property located at 3409 Vista Grande Boulevard, Carson City (Douglas County), Nevada, including any rents generated by the property, are property of the Debtor's bankruptcy estate and shall be turned over to the Trustee for administration in this case.

6. The Debtor's oral Motion for a Stay Pending Appeal is denied without prejudice to the Debtor's right to submit a written motion seeking a stay or other applicable relief in this Court or an appropriate appellate court.

7. The Debtor's request to certify the legal issues in this case to the Nevada Supreme Court pursuant to NEV.R.APP.P. 5 is denied for the reasons set forth above.

8. To the extent any of the foregoing Conclusions of Law should be considered to be findings of fact, they should be construed as such.

## ORDER SUSTAINING TRUSTEE'S OBJECTION TO DEBTOR'S CLAIM OF EXEMPTION AND GRANTING TRUSTEE'S REQUEST FOR TURNOVER

This matter came on regularly for hearing August 14, 1996, before Gregg W. Zive, U.S. Bankruptcy Judge, upon the objection to Debtor's claim of homestead exemption and a request for turnover of rental income filed by Angelique Clark, Chapter 7 Trustee ("Trustee").

Appearing on behalf of the Trustee was Van Meter & Matteoni, by William A. Van Meter, Esq. and appearing on behalf of the Debtor was Lawrence Lozensky, Esq.

687

Pursuant to its findings of fact and conclusions of law entered orally on the record in open court pursuant to FED.R.BANKR.P. 9014, 7052 and FED.R.CIV.P. 52(a), which are hereby incorporated by reference, and its written Findings of Fact and Conclusions of Law entered concurrently with this Order, and good cause appearing;

**IT IS ORDERED** that the Trustee's objection to the Debtor's claim of exemption is sustained.

**IT IS FURTHER ORDERED** that the Debtor's real property located at 3409 Vista Grande Boulevard, Carson City (Douglas County), Nevada, including any rents generated by the property, are property of the Debtor's bankruptcy estate and shall be turned over to the Trustee for administration in the Debtor's bankruptcy case.

**IT IS FURTHER ORDERED** that the Debtor's request to certify the legal issues in this case to the Nevada Supreme Court pursuant to NEV.R.APP.P. 5 is denied.

**IT IS FURTHER ORDERED** that the Debtor's oral Motion for a Stay Pending Appeal is denied without prejudice to the Debtor's right to submit a written motion seeking a stay or other applicable relief in this Court or an appropriate appellate court.