## WILSHIRE INSURANCE CO., doing business as JACK'S BAIL BONDS, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 9828

August 9, 1978            582 P.2d 372

*David M. Schreiber,* Las Vegas, for Appellant.

*George E. Holt,* District Attorney, *Robert S. Sylvain* and *Patrick A. Gaura,* Deputy District Attorneys, Las Vegas, for Respondent.

## OPINION

By the Court, MANOUKIAN, J.:

On March 9, 1976, Jack Miller, doing business as Jack's Bail Bonds, attorney-in-fact for Wilshire Insurance Company, filed in the justices' court a power of attorney and a bail bond in the amount of $5,000 to secure the release of Ron Cooper, a defendant in a criminal proceeding. After a change of plea, Cooper was scheduled for imposition of judgment and sentencing on November 18, 1976, but failed to appear. On November 22, 1976, the court clerk mailed a notice of intent to forfeit bail bond to Jack's Bail Bonds indicating that the bond would be declared forfeited on February 22, 1977. No other notice of intent to forfeit was given to anyone else. On February 22, 1977, Wilshire Insurance Company, through its local agent Jack's Bail Bonds, filed a motion to exonerate bond. On March 8, 1977, movants filed points and authorities contending failure by the court to comply with NRS 178.508 pertaining to notice requirements in bail forfeiture proceedings. They complained that notice was not given to the surety as required by law. The next day on March 9, the court clerk mailed a verbatim copy of the notice of intent to forfeit bond to the Wilshire Insurance Company's offices in California. On March 28, 1977, the district court entered its order denying the motion to exonerate

bail and forfeited the bail bond. Findings of fact and conclusions of law were made to the effect that Jack's Bail Bonds was found to be a general agent acting in behalf of Wilshire Insurance Company. This appeal ensued.

The central issue concerns whether notice of the forfeiture proceedings given to Jack's Bail Bonds is sufficient to impute notice to Wilshire Insurance Company. In addressing the issue, we focus on whether Jack Miller was a special agent or a general agent acting in behalf of Wilshire. The trial court found that Miller had gone beyond mere performance of a special agent and was by "act and affidavit . . . the general agent for Wilshire Insurance Company." NRS 178.508 provides in part:

> If the defendant fails to appear when his presence in court is lawfully required and not excused, the court shall direct the fact of such failure to appear to be entered upon its minutes, and if the undertaking or money deposited instead of bail bond is in excess of $50, the court shall direct that the sureties first be given notice by certified mail that the defendant has failed to appear and shall execute an affidavit of such mailing to be kept as an official public record of the court. The undertaking or money instead of bail bond shall not be declared forfeited until 90 days after the notice is mailed. . . .

Due process requires that notice be given of forfeiture proceedings. Lambert v. California, 355 U.S. 225 (1957). Notice to a general agent is deemed notice to the surety. Kroeger v. Union Indemnity Co., 14 P.2d 258 (Ariz. 1932). In Seigworth v. State, 91 Nev. 536, 539 P.2d 464 (1975), we held that a particular bail bondsman was a special rather than general agent. The issue addressed there was whether a bail bondsman acting pursuant to the authority of a limited power of attorney was a general or special agent of the surety. We examined the express provisions of the power of attorney and found that the bondsman was empowered only to bind the surety to a contract naming the county as beneficiary. Furthermore, the bail bond itself had printed on it the name of the general agent for the surety who was not the bail bondsman involved. Consequently, this Court held that the bail bondsman was a special agent and not personally liable under the bail bond but declined to decide whether notice to a special agent constituted notice to the surety pursuant to NRS 178.508 because the surety was not a party to the proceeding. The surety is a party herein and we are constrained to reach the latter issue in the instant case.

The extent of the power of attorney in *Seigworth* was to

"execute, and deliver . . . a criminal bail bond." 91 Nev. at 538 n. 1, 539 P.2d at 465 n. 1. Here, the power of attorney empowered the bondsman to "execute and deliver bail bonds only." *Seigworth* emphasized that the power of attorney expressly stated: "THIS POWER VOID IF ALTERED OR ERASED." *Id.* at 538, 539 P.2d at 466. Here, the power of attorney similarly stated: "This power of attorney void if altered or erased."

In both instances the language of the power of attorney limited the bail bondsman's authority to those expressly authorized acts. Respondent contends that because the power of attorney failed to indicate a "below named agent" as stated in the power, this constituted a defective authorization neither creating nor limiting the authority of Miller. This argument is without merit. Miller acted as agent, was considered the agent by all concerned, and is indeed limited by the power of attorney document.

Thus, by the express provisions of the power of attorney and in light of *Seigworth,* we consider Miller a special agent.

Respondent, however, contends that Miller by his acts assumed the status of a general agent. It interprets the following language in Miller's affidavit as conceding his status as general agent:

> 2.   That as agent for Wilshire Insurance Company, general agent, affiant on March 9, 1976, posted bail bond.
> . . .

Respondent misinterprets the term "general agent" to apply to Miller instead of applying, as obviously intended, to Wilshire Insurance Company. In addition, respondent cites as indicating a general agency such acts among others as Miller's keeping a constant vigil on the defendant, his visiting defendant's residence to secure custody, his taking a second deed of trust on defendant's home as security for the bond, and his filing a motion to exonerate bail in behalf of the surety. In the aggregate these acts are both innocuous and reasonably incidental to the type of special or limited agent's authorizations and responsibilities here involved.

Respondent is attempting to expand the special agency into a general agency through the acts and behavior of the agent himself. In Ellis v. Nelson, 68 Nev. 410, 233 P.2d 1072 (1951), this Court adopted the statement that:

> It is indispensable to keep in mind here that, as against the principal, there can be reliance only upon what the principal himself has said or done, or at least said or done through some other and authorized agent. The acts of the

agent in question can not be relied upon as alone enough to support an estoppel. If his acts are relied upon there must also be evidence of the principal's knowledge and acquiescence in them.

*Id.* at 419, 233 P.2d at 1076; accord, Nevada Nat'l Bank v. Gold Star Meat Co., 89 Nev. 427, 514 P.2d 651 (1973).

Here, the trial court based its decision on Miller's acts and statements, not on any on the part of Wilshire. In the absence of showing Wilshire's consent or acquiescence respondent cannot enlarge the agency of Miller. The power of attorney expressly limited Miller's authority and any enlargement must necessarily include some involvement on the part of Wilshire. The record is silent with reference to any action on Wilshire's part.

As to the issue of notice to the special agent constituting notice to the surety, in *Seigworth, supra,* we suggested that this Court would not adopt that principle. There we found that a "special agent is an agent authorized to conduct a single transaction or a series of transactions *not involving continuity of service.*" 91 Nev. at 538, 539 P.2d at 465. (Emphasis added.) Bail bondsmen, absent extremely unusual circumstances, are deemed to be special agents, and the lack of "continuity of service" shows insufficient interest with the surety upon which to predicate imputed notice.

NRS 178.508 mandates that the court direct that the surety be notified of the intention to forfeit bail. The plain meaning of the statute is that the 90-day notice be given to the underwriter or surety. Respondent recognized this deficiency when it belatedly sent a copy of the notice of intent to forfeit to Wilshire, which copy stated that the bond would be forfeited on February 22, 1977, a date that had occurred some two weeks previous.

The law does not favor forfeitures and statutes imposing them must be strictly construed. *See,* Porter v. Tempa M. & M. Co., 59 Nev. 332, 93 P.2d 741 (1939) and State v. Harmon, 35 Nev. 189, 127 P. 221 (1912).

Reversed.

BATJER, C. J., and MOWBRAY, THOMPSON, and GUNDERSON, JJ., concur.