129 Nev., Advance Opinion 101

# IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| IN RE: DAVID ORRIN NILSSON, DEBTOR. | No. 61070 |
| WILLIAM A. VAN METER, Appellant, vs. DAVID ORRIN NILSSON, Respondent. | **FILED** DEC 2 6 2013 TRACIE K. LINDEMAN CLERK OF SUPREME COURT BY CHIEF DEPUTY CLERK |

Certified question, pursuant to NRAP 5, regarding homestead exemptions. United States Bankruptcy Court for the District of Nevada; Bruce T. Beesley, Judge.

*Question answered.*

Woodburn & Wedge and John F. Murtha, Reno, for Appellant.

Christopher P. Burke, Reno, for Respondent.

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, GIBBONS, J.:

The United States Bankruptcy Court for the District of Nevada has certified a question of law to this court regarding the ability of a debtor to claim Nevada's homestead exemption. The certified question asks:

SUPREME COURT OF NEVAOA

(O) 1947A

3/10/14: Corrected per letter to publishers. CJ

13-39244

Can a debtor properly claim a homestead exemption for his interest in real property under NRS 21.090(1)(*l*) and NRS Chapter 115 when debtor himself does not reside on the property but his minor children do? Put another way, does a debtor have to actually reside on the property that is the subject of a claimed homestead exemption under NRS 21.090(1)(*l*) and NRS Chapter 115, or is it sufficient that a debtor's minor children reside on the property in order to qualify for the exemption?

*In re Nilsson*, No. BK-11-52664-BTB (Bankr. D. Nev. May 7, 2012). We conclude that a debtor must actually reside on real property in order to properly claim a homestead exemption for that property.

## FACTS AND PROCEDURAL HISTORY

Respondent David Orrin Nilsson (David) and his ex-wife, Kelli, married in 1990. They have three children. In 1994, David and Kelli purchased property in Reno as joint tenants and built a home on it a year later (the Reno property). David and Kelli lived together in the house with their children until 2006, when David moved out of the Reno property and began living in a travel trailer in Sparks. Kelli filed for divorce that same year.

The Nilssons' divorce decree provided that Kelli would reside at the Reno property with the children until it sold. Although the decree provided that the Reno property would be listed for sale on July 1, 2008, or as otherwise agreed, it does not appear that the property was ever listed for sale. Thus, David and Kelli each hold a half interest in the property as tenants in common.

In early 2011, over three years after the final divorce decree was filed, Kelli recorded a homestead declaration with Washoe County,

listing the Reno property as her individual homestead. David did not join in the declaration, although Kelli noted that his name was on the Reno property's title. Subsequently, David filed for Chapter 7 bankruptcy, which was eventually converted to Chapter 13. On his schedule of real property assets, he claimed an interest in the Reno property as half-owner with Kelli. On his schedule of personal property, he listed the Sparks travel trailer and noted that he lived in it.

After a series of amendments, David claimed the Reno property as exempt from inclusion in his bankruptcy estate based on, among other things, the homestead exemption. Appellant William A. Van Meter, the bankruptcy trustee, objected to David's claimed exemption of the Reno property insofar as he had not resided on it since 2006. David responded that, even though he had not lived on the Reno property for several years, he could nonetheless claim the exemption in order to protect his interest in the Reno property for the benefit of his children. The bankruptcy court certified the question to this court without ruling on the trustee's objection. We subsequently accepted the question and directed briefing.

The trustee argues that David cannot claim a homestead exemption on the Reno property because he does not reside there, he did not record a declaration of homestead, and he cannot now record a valid declaration of homestead on the Reno property. David responds that he can claim a homestead exemption on the Reno property even though he does not reside on it, and that he can exempt the Reno property through constructive occupancy because his children still live there and by tracing the homestead back to his family's residency there.

SUPREME COURT
OF
NEVADA

(O) 1947A

## DISCUSSION

### The homestead exemption

"[T]he homestead exemption can only be extended or limited by the statutes or constitutional provision that created it." *Savage v. Pierson*, 123 Nev. 86, 90, 157 P.3d 697, 699 (2007). The homestead exemption was intended to protect "the family home despite financial distress, insolvency or calamitous circumstances," *Jackman v. Nance*, 109 Nev. 716, 718, 857 P.2d 7, 8 (1993), as the preservation of the home was "deemed of paramount importance as a matter of public policy." *I.H. Kent Co. v. Miller*, 77 Nev. 471, 475, 366 P.2d 520, 521-22 (1961). Nevada construes homestead laws liberally in favor of the debtor and his or her family. *Jackman*, 109 Nev. at 718, 857 P.2d at 8. Nevertheless, we have made clear that the "laws exempting the homestead are not based upon principles of equity." *I.H. Kent Co.*, 77 Nev. at 475, 366 P.2d at 521-22. Thus, while the statutory provisions relating to homesteads should be liberally construed, this liberal interpretation "can be applied only where there is a substantial compliance with [the homestead] provisions." *McGill v. Lewis*, 61 Nev. 28, 40, 116 P.2d 581, 583 (1941).

Determining whether a debtor must reside on real property in order to claim a homestead exemption requires us to interpret several constitutional and statutory provisions. *See* Nev. Const. art. 4, § 30; NRS Chapter 115; *see also Jackman*, 109 Nev. at 718, 857 P.2d at 8 ("The homestead exemption, unknown to the common law, was given birth as a constitutional and statutory response to public policy and sentiment."). In interpreting constitutional and statutory provisions, we look first to the provision's language. *See MGM Mirage v. Nev. Ins. Guar. Ass'n*, 125 Nev. 223, 228, 209 P.3d 766, 769 (2009). If the constitutional or statutory

language "is plain and unambiguous, and its meaning clear and unmistakable, there is no room for construction, and the courts are not permitted to search for its meaning beyond the statute itself." *Hamm v. Arrowcreek Homeowners' Ass'n*, 124 Nev. 290, 295, 183 P.3d 895, 899 (2008) (internal quotations omitted).

Under the United States Bankruptcy Code (Code), a debtor who files for bankruptcy may exempt certain assets from his or her estate, thus preventing creditors from reaching the exempted assets to satisfy outstanding debts. 11 U.S.C. § 522(b)(1) (2006). The Code provides that states may opt out of the federal exemption scheme and instead provide for state law exemptions. *In re Virissimo*, 332 B.R. 201, 203 (Bankr. D. Nev. 2005); 11 U.S.C. § 522(b)(2) (2006). Nevada is an opt-out state and lists its property exemptions in NRS 21.090. NRS 21.090(1); *In re Christensen*, 122 Nev. 1309, 1314, 149 P.3d 40, 43 (2006). Under Nevada law, the "homestead as provided for by law, including a homestead for which allodial title has been established and not relinquished and for which a waiver executed pursuant to NRS 115.010 is not applicable" may be exempted from the bankruptcy estate.[1] *See* NRS 21.090(1)(*l*); *see also* Nev. Const. art. 4, § 30 (stating that "[a] homestead as provided by law, shall be exempt from forced sale under any process of law").

*Nevada law requires that a debtor must reside on real property in order to exempt that property as a homestead*

Because the Nevada bankruptcy exemption provisions do not define "homestead," but instead refer to the "homestead as provided for by

---

[1]The word allodial is defined as "[h]eld in absolute ownership." *Black's Law Dictionary* 88 (9th ed. 2009).

law," we turn to Chapter 115 of the Nevada Revised Statutes, which governs homesteads in this state. *Savage*, 123 Nev. at 90-91, 157 P.3d at 700. As relevant here, NRS 115.005(2)(a) defines a homestead as property consisting of "[a] quantity of land, together with the dwelling house thereon . . . to be selected by the husband and wife, or either of them, or a single person claiming the homestead." Thus, the statutory definition of "homestead" does not expressly state whether a party must reside on his or her homestead.[2] It does, however, require that the property "be selected" as a homestead by the party or parties. This requirement is governed by NRS 115.020, which provides that "[t]he selection must be made by either the husband or wife, or both of them, or the single person, declaring an intention in writing to claim the property as a homestead." NRS 115.020(1).

When married persons select their homestead by declaration, the declaration must state that they are married and that one or both of them are, "at the time of making the declaration, residing with their family . . . on the premises." NRS 115.020(2)(a)-(b). Although the statute does not require that a single person declaring an intention to claim a property as a homestead must declare that he or she resides on the

---

[2]However, the Legislature's use of the term "dwelling house" suggests an intent that the party must reside on his or her homestead. *See Black's Law Dictionary* 582 (9th ed. 2009) (defining dwelling house as "[t]he house or other structure in which a person lives; a residence or abode"); *see also Smart v. State*, 190 N.E.2d 650, 651-52 (Ind. 1963) (holding that a rural summer cottage was not a dwelling house within the meaning of Indiana's burglary statute because it was not the owners' primary residence and the owners only "spent a two or three weeks' vacation and weekends there").

 

property, it does require such a person to specify that "he or she is a householder." NRS 115.020(2)(a). This court has defined the term householder as "one who keeps house," further stating that a householder "must be in actual possession of the house" and must be "the occupier of a house." *Goldfield Mohawk Mining Co. v. Frances-Mohawk Mining & Leasing Co.*, 31 Nev. 348, 354, 102 P. 963, 965 (1909). Therefore, based on the language of NRS 115.020(2)(a), a single person declaring an intention to claim a property as a homestead must be "in actual possession of the house." *Id.*

In addition to declaring his or her residence or householder status, any claimant selecting property as his or her homestead must state "that it is their or his or her intention to use and claim the property as a homestead." NRS 115.020(2)(c). David argues that under NRS 115.020(2)(c), a single person, as "any claimant," may file a declaration of homestead for a parcel of real property that he does not reside on because this subsection does not contain its own residency or householder requirement. But this reading of the homesteading statutes ignores the requirement in NRS 115.020(2)(a) that single individuals selecting a homestead must declare that they are householders. Thus, based on the language of the statute, we conclude that in order to select property as a homestead, an individual must reside on that property. *See* NRS 115.020(2)(a); *Goldfield Mohawk Mining Co.*, 31 Nev. at 354, 102 P. at 965.

*David may not exempt the Reno property as a homestead under the doctrine of constructive occupancy*

David argues that he should be able to claim constructive occupancy of the Reno property because he originally resided on the

property and only moved because of the divorce. Further, he argues that he should be able to claim constructive occupancy in order to protect his children who still reside on the property. David cites a number of cases from other jurisdictions in support of his proposition that he can claim constructive occupancy. *See In re Thomas*, 27 B.R. 367, 370-71 (Bankr. S.D.N.Y. 1983) (finding that a debtor driven from her residence by domestic violence may still claim an exemption in the home); *see also Beltran v. Kalb*, 63 So. 3d 783, 787 (Fla. Dist. Ct. App. 2011) (applying Florida's constitutional provision that allows homestead exemptions for "the residence of the owner or the owner's family," thus ruling that an owner of a house may claim a homestead as long as his family resides there).[3] We do not find these cases persuasive.

In Nevada, "[i]t is axiomatic there can not be a homestead absent residence[,] . . . when a declaration of homestead is filed the declarant must be residing on the premises with the intent to use and claim the property as a homestead." *In re Sullivan*, 200 B.R. 682, 685 (Bankr. D. Nev. 1996), *aff'd*, 163 F.3d 607 (9th Cir. 1998). While the

---

[3]David's reliance on these cases is misplaced because they are distinguishable from this situation for a number of reasons. First, many deal with situations in which a debtor spouse left the marital residence but was still awaiting final resolution of the pending divorce—thus each spouse's possessory right to the property had yet to be determined. *See In re Moulterie*, 398 B.R. 501, 505 (Bankr. E.D.N.Y. 2008). In these situations, many courts have found that the debtor spouse was entitled to a homestead because the possessory right to the preexisting homestead was not yet finalized in state court. *Id.* That is not the case here. Additionally, several of the cited cases apply homestead statutes that allow for a much more liberal scrutiny of the homestead residence requirement. *See Beltran*, 63 So. 3d at 787.

statutory provisions relating to homesteads should be liberally construed, this liberal interpretation "can be applied only where there is a substantial compliance with [the homestead] provisions." *McGill*, 61 Nev. at 40, 116 P.2d at 583; *see Maxwell v. State Indus. Ins. Sys.*, 109 Nev. 327, 330, 849 P.2d 267, 269 (1993) ("Where the language of the statute is plain and unambiguous[,] . . . a court should not add to or alter [the language] to accomplish a purpose not on the face of the statute . . . ." (internal quotation marks omitted)).

We conclude that under NRS 115.020(2), a homestead declaration must concern the claimant's "bona fide residence." *See Jackman*, 109 Nev. at 721, 857 P.2d at 10 (concluding that a building used partly as a business could be claimed as a homestead, so long as the property remained the family's "bona fide residence"); *McGill*, 61 Nev. at 39-40, 116 P.2d at 583 (requiring proof of actual bona fide residence at the time the homestead declaration is filed). As such, we conclude that David may not validly file a homestead declaration on the Reno property because it was not his bona fide residence, and we decline David's invitation to extend Nevada homestead law based on constructive occupancy.[4]

We therefore conclude that a debtor must actually reside on

---

[4]We note that David may still be able to file a homestead declaration after he filed his bankruptcy petition, since we have held that a declaration may be filed at any time before the actual sale under execution. *See Myers v. Matley*, 318 U.S. 622, 627-28 (1943); *In re Zohner*, 156 B.R. 288, 290 (Bankr. D. Nev. 1993); *Massey-Ferguson, Inc. v. Childress*, 89 Nev. 272, 272, 510 P.2d 1358, 1358 (1973). However, such a declaration would still be invalid due to the fact that the Reno property is not David's bona fide residence.

 

real property in order to properly claim a homestead exemption for that property.[5]

_____, J.
Gibbons

We concur:

_____, C.J.
Pickering

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Douglas

_____, J.
Cherry

_____, J.
Saitta

_____

[5]We have considered the parties' remaining arguments and conclude that they are without merit.