138 Nev., Advance Opinion 32

# IN THE SUPREME COURT OF THE STATE OF NEVADA

EFREN AGUIRRE, JR.,
Appellant,
vs.
ELKO COUNTY SHERIFF'S OFFICE,
Respondent.

No. 82445

**FILED**

MAY 05 2022

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

Appeal from a district court judgment in a forfeiture action. Fourth Judicial District Court, Elko County; Nancy Porter, Judge.

*Reversed.*

Gerber Law Offices, LLP, and Zachary A. Gerber and Travis W. Gerber, Elko,
for Appellant.

Tyler J. Ingram, District Attorney, and Rand J. Greenburg, Deputy District Attorney, Elko County,
for Respondent.

BEFORE THE SUPREME COURT, SILVER, CADISH, and PICKERING, JJ.

## OPINION

By the Court, CADISH, J.:

In this appeal, we primarily consider whether Nevada's homestead exemption protects real property from civil forfeiture and whether an incarcerated individual who records a homestead declaration while serving his or her prison sentence qualifies as a bona fide resident of

the homestead property. In the proceeding below, the district court determined that the homestead exemption may, as a general matter, protect against civil forfeiture. The court found that the appellant did not substantially comply with the residency requirement of the homestead exemption under NRS 115.020, however, because he made his declarations of homestead while incarcerated. Accordingly, the district court entered a judgment of forfeiture against appellant, from which this appeal was taken.

As to the homestead exemption's reach, we hold that there is no forfeiture exception to the homestead exemption and public policy does not support the creation of such an exception. Regarding bona fide residence status, we hold that incarcerated individuals may still be deemed residents for purposes of the homestead exemption under NRS 115.020. Applying these standards, we conclude that appellant's homestead declaration substantially complied with NRS 115.020, and the district court therefore erred when it entered a judgment of forfeiture. Accordingly, we reverse.

*FACTS AND PROCEDURAL HISTORY*

In 2016, appellant Efren Aguirre, Jr.'s parents conveyed to him a home and real property located in Spring Creek, Nevada (the Property). In October 2017, Aguirre was arrested for trafficking controlled substances after a search of the Property revealed over 80 grams of heroin. The State subsequently charged Aguirre with two counts of Trafficking a Schedule I Controlled Substance. On November 2, 2017, respondent Elko County Sheriff's Office filed a complaint for forfeiture of the Property, the proceedings for which were stayed pending resolution of Aguirre's criminal case. On November 21, 2017, while in jail, Aguirre recorded his initial Declaration of Homestead, which stated his intent to claim and use the Property as a homestead. In August 2018, the court accepted Aguirre's guilty plea to one count of Trafficking a Schedule I Controlled Substance.

In October 2018, the court entered a judgment of conviction, sentencing Aguirre to a term of incarceration of 48 to 120 months and imposing a fine of $100.

In December 2018, while incarcerated, Aguirre leased the Property to a third party on a week-to-week basis. The lease agreement specifically acknowledged that Aguirre claimed and intended that the Property remain his homestead and that he intended to occupy the Property after his release from prison.

In March 2020, the Sheriff moved for summary judgment in the civil forfeiture action, arguing that Aguirre's declaration of homestead was invalid because he did not reside at the Property when he recorded it and all right, title, and interest in the Property had vested in the Sheriff before Aguirre claimed a homestead exemption. Aguirre opposed the motion, arguing that under Article 4, Section 30 of the Nevada Constitution, and NRS 115.010(1), his recorded homestead declaration protected the Property from forfeiture. He asserted that because he recorded his homestead declaration before any final process in the forfeiture action, his declaration preempts forfeiture. Recognizing that NRS 115.010(5) excludes property held under allodial title from protection from forfeiture, Aguirre argued that by specifically excluding that type of title, the Legislature intended for the homestead protections to preempt forfeiture of real property held under other forms of title, including his Property. Aguirre also moved for summary judgment in his favor on the same grounds.

In May 2020, while in prison and while a decision on the parties' summary judgment motions was pending, Aguirre recorded an amended Declaration of Homestead. In July 2020, following a hearing, the district court denied both summary judgment motions, concluding, as relevant here,

that (1) on its face, NRS 115.010(1)'s homestead protections appear to apply to the Property, as neither party alleged that Aguirre holds allodial title to the Property such that it would not be afforded protection under NRS 115.010(5); (2) other states have found that a homestead exemption protects covered properties from forfeiture; and (3) "[t]he Nevada Constitution and Nevada Revised Statutes have expressly stated the exceptions to the homestead exemption," and "[f]orfeiture is not one of them." The district court determined that Aguirre's homestead declaration was timely because it was recorded before execution of sale, but issues of fact remained as to whether his declaration substantially complied with NRS 115.020(2)'s requirements for a valid homestead declaration, particularly including whether he was a bona fide resident of the Property when he recorded the declaration.

In September 2020, after conducting a bench trial and considering post-trial briefing, the district court concluded that Aguirre did not "substantially comply" with NRS 115.010's requirements for a homestead exemption because he filed his declarations of homestead while incarcerated and, thus, did not have actual possession of the Property for homesteading purposes. The court further concluded that forfeiture was proper because Aguirre used the Property to commit a drug offense. In so concluding, the court rejected Aguirre's claim that forfeiture of the Property valued at roughly $298,000 violated the Eighth Amendment's Excessive Fines Clause. The court reasoned that a forfeiture of nearly three times the maximum $100,000 fine allowed by statute when Aguirre was convicted did not per se violate the Eighth Amendment and, considering the gravity of Aguirre's offense, the fine was not excessive. Accordingly, the district court awarded the Sheriff a judgment of forfeiture. Aguirre appeals.

## DISCUSSION

*A valid homestead is exempt from civil forfeiture*

In denying summary judgment, the district court determined that forfeiture is not one of the exceptions to the homestead protections under either the Nevada Constitution or the Nevada Revised Statutes, such that the Property was not subject to forfeiture if Aguirre met the requirements for a valid homestead declaration. Although the district court ultimately determined that Aguirre did not qualify as a "householder," i.e., the occupier of the Property in actual possession of it, and that Aguirre consequently could not validly declare a homestead exemption, we conclude that the court correctly determined that a valid homestead is exempt from forfeiture.

The Nevada Constitution provides that "[a] homestead as provided by law, shall be exempt from forced sale under any process of law." Nev. Const. art. 4, § 30. The Constitution creates two specific exceptions to the homestead exemption, namely, that "no property shall be exempt from sale for [1] taxes or [2] for the payment of obligations contracted for the purchase of said premises, or for the erection of improvements thereon." *Id.* NRS 115.010(1) codifies the general rule exempting homesteads from any "forced sale on execution or any final process from any court," while NRS 115.010(3) codifies the constitutional exceptions to the homestead exemption.

The Sheriff argues on appeal that even if Aguirre's homestead declaration were valid, the Property would nevertheless be subject to forfeiture because Aguirre used the Property in trafficking several Schedule I substances, as evidenced by the drugs found in the search of the Property. While acknowledging that the Nevada Constitution and NRS 115.010(3) establish specific exceptions that are inapplicable here, the Sheriff, relying

SUPREME COURT
OF
NEVADA

(O) 1947A

5

on *Breedlove v. Breedlove*, 100 Nev. 606, 691 P.2d 426 (1984), and *Maki v. Chong*, 119 Nev. 390, 75 P.3d 376 (2003), asserts that public policy warrants creating a forfeiture exception to the homestead exemption.[1] We disagree, as neither *Breedlove* nor *Maki* supports creating a forfeiture exception to the homestead exemption and such an exception would thwart the goal of the homestead exemption.

With the understanding that Nevada's "constitutional and statutory provisions relating to homesteads should be liberally construed" and require only substantial compliance, *McGill v. Lewis*, 61 Nev. 28, 40, 116 P.2d 581, 583 (1941), and that "[t]he law does not favor forfeitures and statutes imposing them must be strictly construed," *Wilshire Ins. Co. v. State*, 94 Nev. 546, 550, 582 P.2d 372, 375 (1978), we turn to *Breedlove* and *Maki*. In *Breedlove*, the homesteader invoked the homestead exemption in an attempt to avoid paying a child-support judgment, 100 Nev. at 607, 619 P.2d at 426, a tactic which clearly contravened the purpose of the homestead exemption, *see Jackman v. Nance*, 109 Nev. 716, 718, 857 P.2d 7, 8 (1993) ("The purpose of the homestead exemption is *to preserve the family home* despite financial distress, insolvency or calamitous circumstances, and *to strengthen family security and stability for the benefit of the family, its individual members*, and the community and state in which the family resides." (emphases added)). Moreover, the homesteader in *Breedlove* consistently acted in bad faith to avoid paying child support, most notably

---

[1]At oral argument, the Sheriff disclaimed any textual basis for creating a forfeiture exception to the homestead exemption and instead specifically asserted that public policy alone warranted creating a forfeiture exception. Thus, we address only whether public policy warrants creating a forfeiture exception to the homestead exemption, not whether any statute provides a basis for creating such an exception.

SUPREME COURT
OF
NEVADA

(O) 1947A

6

by creating a fraudulent trust to attempt to protect his home against his ex-wife's attempts to collect on the child-support judgment. 100 Nev. at 607, 691 P.2d at 426.

Here, creating an exception would result in Aguirre's family losing their home, which would conflict with the purpose of the homestead exemption by rendering the declarant and his family homeless. *See Jackman*, 109 Nev. at 718, 857 P.2d at 8. The Sheriff focuses on the harm that drug dealing inflicts on the community and asserts that the public policy behind the homestead exemption is not furthered by its application here. While we certainly do not condone such conduct or discount its detrimental impact, the Sheriff's argument overlooks that the purpose of the homestead is to protect families against homelessness, *see id.*; *see also Maroun v. Deutsche Bank Nat'l Tr. Co.*, 109 A.3d 203, 207 (N.H. 2014) ("The exemption protects the family from destitution . . . ."), and to protect communities from the harm caused by homelessness, *see Redmond v. Kester*, 159 P.3d 1004, 1007 (Kan. 2007) ("The homestead exemption was established for the benefit of the family and society to protect the family from destitution, and society from the danger of her citizens becoming paupers." (internal quotation marks omitted)); *see also Maroun*, 109 A.3d at 207. Moreover, unlike the homesteader in *Breedlove*, there is no evidence that Aguirre acted in bad faith in recording a homestead declaration.

Similar to *Breedlove*, *Maki* concluded that "[u]nder equitable lien principles, the homestead exemption is inapplicable when the proceeds used to purchase real property can be traced directly to funds obtained through fraud or similar tortious conduct." 119 Nev. at 394, 75 P.3d at 379. There, the appellant signed a limited power of attorney that allowed the respondent to cash the appellant's State Industrial Insurance System

settlement check. *Id.* at 391-92, 75 P.3d at 378. The respondent was supposed to use the settlement check to retain an attorney to help the appellant appeal his conviction, but she instead used the funds to purchase a home. *Id.* at 392, 75 P.3d at 378. After the appellant obtained a writ of execution, the respondent asserted that the homestead exemption protected her home from execution. *Id.* While the district court agreed, we did not. *Id.* at 392-94, 75 P.3d at 378-79. As we explained, "debtors who fraudulently acquire funds are 'not the type of debtor whom the legislature sought to protect.'" *Id.* at 394, 75 P.3d at 379 (quoting *Breedlove*, 100 Nev. at 609, 691 P.2d at 428). Concluding that "[t]he homestead exemption statute cannot be used as an instrument of fraud and imposition," *id.* (quoting *Webster v. Rodrick*, 394 P.2d 689, 692 (Wash. 1964)), we recognized that public policy "supports our application of an exception to homestead exemptions for victims of fraud or similar tortious conduct" because "the exemption's purpose is to provide protection to individuals who file the homestead exemption in good faith." *Id.*

Here, however, Aguirre did not obtain the Property with fraudulent funds, as his parents conveyed the Property to him. The Sheriff's argument that a person does not "make[ ] [a] declaration of homestead in good faith" if he or she "files a homestead to protect the property from forfeiture for crimes committed in the community" is not persuasive. First, the bad-faith finding in *Maki* was expressly tied to the use of fraudulently obtained funds to purchase a home, 119 Nev. at 394, 75 P.3d at 379, which did not occur here. Second, the Sheriff's theory would preclude any homestead declaration after any process of law begins, which contradicts our prior holding that a party can record a valid homestead up until the day of the forced sale. *See In re Nilsson*, 129 Nev. 946, 952 n.4, 315 P.3d 966,

970 n.4 (2013) ("[W]e have held that a [homestead] declaration may be filed at any time before the actual sale under execution."). Finally, the homestead exemption protects against "calamitous circumstances," *Jackman*, 109 Nev. at 718, 857 P.2d at 8, which may include protecting the homestead when the declarant is arrested because the homestead also protects the declarant's family who live at the property, *see id.* We therefore reject the Sheriff's argument that even if Aguirre recorded a valid homestead declaration, the forfeiture of the Property would be proper.[2]

*Aguirre satisfied NRS 115.020, and thus, the Property is a constitutionally protected homestead*

The Sheriff does not dispute that Aguirre owns the Property or that he lived at the Property before his arrest, as declared in his homestead declarations. The Sheriff contends, however, that Aguirre failed to satisfy NRS 115.020(2)(b), which, in relevant part, requires a homestead declarant to state that he or she is "residing" on the premises. Relying on *Nilsson*, 129 Nev. at 946, 315 P.3d at 996, and *In re Ellis*, No. 19-14495-MKN, 2019 WL 11590521 (Bankr. D. Nev. Nov. 25, 2019), the Sheriff argues that, at most, Aguirre is a constructive resident of the Property because he was incarcerated when he filed his homestead declarations. Finally, the Sheriff suggests that Aguirre's act of renting the Property to a third party precludes him from establishing the Property as his residence.

Aguirre argues that the Property is his bona fide residence because he lived there and intended to continue residing there before his incarceration, and he intends to return to living there after his

---

[2]We note that NRS 115.010(5) provides that a property protected by allodial title is not exempt from forfeiture. However, as the Sheriff conceded at oral argument, this provision does not render homesteads nonexempt from forfeiture. The Legislature, therefore, has not expressed a public policy against homestead protection from forfeiture.

SUPREME COURT
OF
NEVADA

(O) 1947A

9

incarceration. He also asserts that his incarceration is a temporary absence that does not negate his residency. Aguirre contends that he did not claim a constructive occupancy and the district court erred in evaluating his homestead declaration as constructive occupancy. Further, Aguirre argues, temporarily renting out the Property does not preclude him from establishing his residency. Applying de novo review to the district court's conclusion that the Property did not qualify for a homestead exemption under NRS 115.010 based on Aguirre's residency status, *Torres v. Goodyear Tire & Rubber Co.*, 130 Nev. 22, 25, 317 P.3d 828, 830 (2014) (reviewing questions of statutory construction de novo); *see Spector v. Spector*, 226 So. 3d 256, 258-59 (Fla. Dist. Ct. App. 2017) (applying de novo review to the trial court's legal conclusions regarding the application of homestead protections), we agree with Aguirre.[3]

---

[3]Aguirre was released from custody during the pendency of this appeal and recorded another homestead declaration once he resumed physical residence at the Property. Aguirre filed a supplemental appendix containing this homestead declaration, which the Sheriff moved to strike. While we denied the Sheriff's motion to strike, we do not consider the supplemental homestead declaration, as it was not in the record before the district court. *See Mack v. Estate of Mack*, 125 Nev. 80, 91, 206 P.3d 98, 106 (2009) ("On appeal, a court can only consider those matters that are contained in the record made by the court below and the necessary inferences that can be drawn therefrom."). Moreover, we decline to address whether the second amended homestead declaration moots the temporary incarceration issue, as Aguirre did not cogently argue that the appeal is moot in light of the second amended homestead declaration. *See Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006) (explaining that this court need not consider arguments that are not cogently argued or supported by relevant authority); *see also Burnham v. Coffinberry*, 76 P.3d 296, 301 (Wyo. 2003) (declining to consider respondent's argument that the appeal is moot in light of intervening events because he did "not present pertinent authority or cogent argument to convince [the court] that this appeal is moot").

Under the statutory definition of "legal residence," the Property qualifies as Aguirre's residence at the time of his arrest. *See* NRS 10.155 (providing that a person's legal residence "is that place where the person has been physically present within the State"). Crucially, an individual's residence does not change because of a temporary absence. *See id.* ("Should any person absent himself or herself from the jurisdiction of his or her residence with the intention in good faith to return without delay and continue his or her residence, the time of such absence is not considered in determining the fact of residence.").

While this court has not previously addressed whether an individual's incarceration is a temporary absence for homestead purposes, courts in several other jurisdictions deem incarceration to be a temporary absence. *See, e.g., In re Crabb*, No. 05-02594-H7, 2007 WL 7209436, at \*1 (Bankr. S.D. Cal. June 21, 2007) (concluding that the "debtor's incarceration is a temporary absence from her homestead that will not defeat her exemption"); *Roemelmeyer v. Godinez*, 10 B.R. 70, 71 (Bankr. S.D. Fla. 1981) ("Imprisonment, which involves a forced absence from the home, does not effect an abandonment of homestead rights."); *Roberts v. Grisham*, 493 So. 2d 940, 942 (Miss. 1986) ("Under the law as it presently stands, absence occasioned by imprisonment—even a life sentence—does not defeat the claim of homestead."); *Holden v. Cribb*, 561 S.E.2d 634, 639 (S.C. Ct. App. 2002) (concluding that a debtor, "though incarcerated, is entitled to the protection of the homestead exemption"). As one such court reasoned, "we daresay [a debtor] has no intent to make the detention center his permanent residence," and "[t]o hold otherwise would thwart the underlying policy of the homestead exemption." *Holden*, 561 S.E.2d at 639. We find these authorities persuasive, and therefore, we hold that an individual's

incarceration is a temporary absence for purposes of the homestead exemption. Because Aguirre's incarceration is a temporary absence, he satisfied the residency requirement of the homestead exemption. *See* NRS 115.020(2)(b); *see also In re Smith*, 22 B.R. 866, 867-68 (Bankr. E.D. Va. 1982) (concluding that an inmate resided at the property for homesteading purposes even though she was physically in jail when she recorded her homestead declaration); *see also In re Buick*, 237 B.R. 607, 610 (Bankr. W.D. Pa. 1999) (recognizing that an involuntary or compulsory absence from the homestead does not constitute a relinquishment of homestead rights).

The Sheriff's arguments to the contrary are unavailing. First, the Sheriff's reliance on *Nilsson* is misplaced. *Nilsson* addressed only whether constructive occupancy could satisfy the residency requirement for homestead purposes. 129 Nev. at 951, 315 P.3d at 969-70. There, the declarant argued that he retained "constructive occupancy" of the house for homestead purposes because he had previously lived in the house, and his ex-wife and children still lived there. *Id.* at 951, 315 P.3d at 969. We declined to adopt the constructive occupancy doctrine and concluded that the declarant did not record a valid homestead declaration because he did not actually reside at the property. *Id.* at 952-53, 315 P.3d at 970. However, *Nilsson* did not address the temporary absence doctrine, nor did its facts present an opportunity to do so, as there was no indication that the declarant's absence was involuntary or compulsory, *see Buick*, 237 B.R. at 610, or that the declarant intended to return to the household after a temporary absence, *see In re Pham*, 177 B.R. 914, 919 (Bankr. C.D. Cal. 1994) (explaining that a "temporary absence from the residence, for, e.g., vacation or hospitalization, would not destroy the characteristic of the residence as the principal dwelling").

Second, the Sheriff's reliance on the bankruptcy court's decision in *Ellis*, 2019 WL 11590521, is also misplaced. There, the declarant recorded a homestead declaration while imprisoned. *Id.* at *2. She contended "that she was legally prohibited from living at the [r]esidence as of the [p]etition [d]ate and should not be denied the benefit of the homestead protection afforded under Nevada law." *Id.* Citing *Nilsson*, the court sustained the trustee's objection to the declarant's homestead exemption claim, concluding that the declarant's argument was "the legal equivalent of asserting constructive occupancy of the [r]esidence that simply does not constitute bona fide residency." *Id.* at *4. However, *Ellis* did not discuss any of the persuasive caselaw establishing that incarceration is a temporary absence that does not preclude homestead protection, nor did it provide any analysis as to why incarceration is equivalent to constructive occupancy.[4] *See id.* We therefore decline to follow *Ellis*.

Third, to the extent the Sheriff argues that Aguirre's subsequent act of leasing the Property to a third party precludes establishing the Property as his bona fide residence, we disagree.[5] An

---

[4]Moreover, the court characterized the objection as "much ado about nothing" because the debtor had been released from prison and resided at the residence, and thus, "nothing prevent[ed] the [d]ebtor from recording another homestead declaration accurately representing that she currently resides at the [r]esidence." *Ellis*, 2019 WL 11590521, at *3.

[5]To the extent the Sheriff argues Aguirre abandoned the homestead by leasing it, we disagree because merely leasing the Property to another during a temporary absence does not constitute abandonment. *See* NRS 115.040(2) ("The homestead property shall not be deemed to be abandoned without a declaration thereof in writing, signed and acknowledged by both spouses, or the single person claiming the homestead, and recorded in the same office and in the same manner as the declaration of claim to the homestead is required to be recorded.").

individual can obtain homestead protection for commercial property so long as the individual also resides at the property. *See Jackman*, 109 Nev. at 721, 857 P.2d at 10 (concluding that "a homestead may be claimed upon premises used partly for business and partly for a dwelling . . . provided it is and continues to be the bona fide residence of the family" (emphasis omitted)); *cf. Drake Interiors, LLC v. Thomas*, 433 S.W.3d 841, 848 (Tex. Ct. App. 2014) ("Nor does temporary renting of the homestead constitute an abandonment."). Because the Property remains Aguirre's bona fide residence while he is temporarily absent from it, his use of the Property for a commercial purpose does not preclude homestead protection, especially when the lease provides that the "Tenant and Owner agree that the residence is the primary residence and homestead of [Aguirre], and that it is expressly understood that [Aguirre] intends to occupy the residence as his homestead upon his release from incarceration."

Under NRS 115.020(2)(a) and (c), a single declarant must also state that he or she is a householder and that he or she intends to use and claim the property as a homestead. A householder is "one who keeps house" who is "in actual possession of the house" and the "occupier of a house." *Nilsson*, 129 Nev. at 951, 315 P.3d at 969 (quoting *Goldfield Mohawk Mining Co. v. Frances-Mohawk Mining & Leasing Co.*, 31 Nev. 348, 354, 102 P. 963, 965 (1909)). A declarant need only substantially comply with NRS 115.020. *See McGill*, 61 Nev. at 40, 116 P.2d at 583.

Aguirre's amended homestead declaration substantially complied with NRS 115.020. In it, Aguirre stated that he is a householder who intends to use and claim the Property as a homestead. Although he was incarcerated, his temporary absence from the Property does not affect

his residency for homestead purposes, as discussed *supra*. Accordingly, the homestead exemption protects the Property from forfeiture.[6]

The Sheriff's arguments do not show otherwise. To begin, as explained, renting the Property to another while Aguirre is temporarily absent does not preclude the homestead exception. *See Jackman*, 109 Nev. at 721, 857 P.2d at 10. Further, the Sheriff's reliance on several cases for the proposition that renting a property precludes receiving homestead protection is misplaced, as those cases are either factually distinguishable or contrary to Nevada law. For example, *In re Holt* is inapposite because there the debtors sought homestead protection on their residence, as well as a contiguous property which they rented to another individual. 357 B.R. 917, 924 (Bankr. M.D. Ga. 2006). The court denied homestead protection as to the contiguous property because Georgia law allowed a party to claim a homestead only over their dwelling, not any contiguous land. *Id.* That is not the case here, as Aguirre is claiming a homestead only over his residence. Regardless, unlike Georgia, Nevada's broad statutory definition of a "homestead" encompasses land contiguous to the homestead, *see* NRS 115.005(2)(a) (defining a homestead as "[a] quantity of land, together with the dwelling house thereon and its appurtenances"), especially when construed, as it must be, in favor of the homestead exemption and against forfeiture, *see Wilshire Ins. Co.*, 94 Nev. at 550, 582 P.2d at 375; *McGill*, 61 Nev. at 40, 116 P.2d at 583. Similarly, *In re Radtke*, 344 B.R. 690, 693 (Bankr. S.D. Fla. 2006), and *In re Bornstein*, 335 B.R. 462, 464-66 (Bankr.

---

[6]Both parties agree that the Property is valued at $298,000, which falls within the protected homestead equity amount. *See* NRS 115.010(2) (providing that the homestead exemption "extends only to that amount of equity in the property held by the claimant which does not exceed $605,000 in value").

M.D. Fla. 2005), are inapposite because they held that a landowner cannot claim a homestead in a property used in a commercial capacity, whereas Nevada law is clear that a homestead can be claimed in a property used for commercial purposes so long as the property remains the bona fide residence of the declarant, *Jackman*, 109 Nev. at 721, 857 P.2d at 10.

Also unpersuasive is the Sheriff's argument that Aguirre's amended homestead declaration was untimely because final process became complete when the district court entered the judgment of forfeiture. First, Aguirre recorded his amended homestead declaration in May 2020, while the district court did not enter a judgment of forfeiture until December 31, 2020. Thus, the amended homestead declaration is not untimely, as it predated the forfeiture judgment. *Cf. Massey-Ferguson, Inc. v. Childress*, 89 Nev. 272, 272, 510 P.2d 1358, 1358 (1973) (concluding that a homestead exemption recorded three days prior to the sheriff's sale of the property was valid). Second, even had the judgment predated the amended declaration, final process would not be complete because it may still be reversed on appeal. *See generally Sheriff, Carson City, Nev. v. A 1983 Datsun 280 ZX Sedan*, 106 Nev. 419, 421, 794 P.2d 346, 348 (1990) (concluding that this court has jurisdiction to hear appeals in forfeiture cases). Finally, as we have noted, "a [homestead] declaration may be filed at any time before the actual sale under execution."[7] *Nilsson*, 129 Nev. at 952 n.4, 315 P.3d at 970 n.4. Accordingly, we conclude that Aguirre's amended declaration was

---

[7]While the Sheriff argued below that Aguirre's homestead declaration was ineffective because title vested in the Sheriff's office when the property was used to facilitate the commission or attempted commission of a felony, the Sheriff did not raise that argument on appeal. Thus, we do not consider it.

SUPREME COURT
OF
NEVADA

(O) 1947A

timely and established a valid homestead exemption that protects the Property from forfeiture.[8]

## CONCLUSION

Public policy does not warrant creating a civil forfeiture exception to the homestead exemption. Further, incarcerated individuals may still be deemed residents for purposes of the homestead exemption under NRS 115.020. Aguirre's amended declaration established that he qualified as a bona fide resident of the Property because he lived there before his incarceration and intended to live there upon his release, and his incarceration was a temporary absence that did not negate his residency. Thus, Aguirre's amended declaration substantially complied with NRS 115.020, entitling him to the protection of the homestead exemption. Accordingly, we reverse the district court's judgment of forfeiture.

_____, J.
Cadish

We concur:

_____, J.
Silver

_____, J.
Pickering

---

[8]In light of our disposition, we need not address Aguirre's remaining arguments.